## JOHN DIXON *vs.* JOSIAH PARMELEE.

The Court will not grant a new trial when it is manifest it will not avail the applicant.

The privilege from testifying to facts, confidentially communicated to the witness, is confined to attorneys, and does not extend to confidential communications made to other professional men in the way of business.

And the privilege does not extend to all disclosures made by a client to his attorney, but is strictly limited to those which are made in professional business, pending the relation of counsel and client.

This was an action of *ejectment* for land in the village of *Danville*. Plea, not guilty.

V

CALEDONIA, March, 1829.

Dixon *vs.* Parmelee.

It appears from the bill of exceptions in this case, that on the 25th day of November, 1822, the defendant owned the premises in question, and on that day conveyed the same by deed to one *Ferguson*—That on the 29th of December, 1823, the plaintiff attached said premises, on a debt against *Ferguson*, and afterwards on the 14th of August, 1824, set off the same on an execution obtained in the suit in which said premises were attached—That on the 8th of August, 1823, *Ferguson* executed a deed of the land in question to one *Theodore Hardy*, which deed was authenticated by proof instead of an acknowledgment. The proceedings were commenced on the 3d day of August, 1824, before a justice peace, and completed before the county court, June term, 1825 ; and the deed was recorded July 25, 1825.

The question, on trial in the county court, was, whether the title of *Ferguson* passed under the deed to *Hardy*, or vested in the plaintiff by virtue of this attachment and levy. The defendant relied upon two grounds: 1. That at and before the time of attachment, *Dixon* had notice of the deed to *Hardy*, though it was not then acknowledged or recorded. 2. That all the proceedings in the suit of *Dixon* against *Ferguson* were covinous and fraudulent, and intended to defeat the creditors and purchasers of *Ferguson* of their rights.

As a part of the evidence to the first point the defendant called *Charles Story, Esq.* and offered to prove by him, among other things, that just before the attachment was made he carried a written communication from *Ferguson* to the plaintiff containing information of the deed to *Hardy*, and that the witness also informed the plaintiff of that deed. The witness stated, that at the time in question, he was retained by *Ferguson*, as counsel in that business, and that whatever message or information he might have conveyed from *Ferguson* to the plaintiff, was conveyed and given in the exercise of professional trust and confidence ; and declined testifying to the facts aforesaid, unless directed so to do by the court. Whereupon the court decided that he was not compellable to testify to those facts.

As part of the evidence to the second point, the defendant read the deposition of *Lucas Parsons*. To impeach *Parsons*, the plaintiff offered to prove by *Nathaniel Nichols* that in September 1826, *Parsons* sent the witness to *Danville* to get back the deposition, unless it was paid for—and to let the party have it who would give most for it—that he directed the witness to demand one hundred dollars, but to accept eighty dollars, if he could get no more. To this evidence the defendant objected ; but the witness was admitted, and he testified to the effect aforesaid.

After the argument was closed, the defendant requested the court to charge the jury, that the title of the plaintiff was not made out, because the record of the execution and levy, which was used in evidence, was not sufficient or proper evidence to show that said execution and levy had been returned to, and recorded in, the office of the clerk of the county court from which the execution issued. The court decided that this objection was out of time, (being then first suggested) and refused to charge as requested. Verdict for plaintiff. To the several decisions of the court, so made by the court as aforesaid, the defendant excepted, and removed the cause to the Supreme Court on a motion for a new trial.

Upon the cause being called for trial, the counsel for the plaintiff produced copies of the record of the county court, by which it appeared that the execution and levy thereof had, since the trial in the connty court, been recorded as the law directs. Whereupon the Court suggested that, if upon an inspection of the record, it appeared the statute had been complied with, so that in case a new trial should be granted the verdict would not be varied by the records being given in evidence, the Court would not set aside the verdict, because the recording did not appear on the former trial.

*The counsel for the defendant* contended—That it did not appear that *Story* was an attorney, and that the Court could not presume a fact for the purpose of sustaining the opinion of the court excepted to—that the services done by him were not professional. 6 *Mod.* 47.—That when an attorney is employed in business which is not strictly professional, he is to testify. 9 *Com. Law Rep.* 233, *Bramwell et al.* vs. *Lucas et al.*—That any extraneous communications which are not instructions for conducting a suit are not privileged from disclosure, though made to counsel. 2 *Stark. Ev.* 396, 7.—4 *T. Rep.* 758.—That the testimony of *Nichols* was inadmissible—that if such evidence were received, a witness could at any time deprive the party of the benefit of his testimony.

*For the plaintiff*, it was contended—That *Story* was privileged from testifying—that the information he was called upon to disclose was communicated to him in professional trust and confidence. *See* 2 *Stark. Ev.* 395, *and the cases there cited.*

That *Nichols* was properly admitted; for if a witness send his testimony into market, it ought to discredit him.

The opinion of the Court was delivered by

PADDOCK, J. There is some difficulty in drawing a line be-

Caledonia, March, 1829.

Dixon vs. Parmelee.

tween those communications made by a client to his counsel, which the latter ought to testify to, if called upon, and those wherein he ought not.

It has long been the established law, that councelors, solicitors and attorneys, ought not to be permited to discover the secrets of their clients: it is declared repugnant to the policy of the law, to permit the disclosure of secrets by him whom the law has intrusted therewith. It is the privilege of the *client*, that the mouth of his counsel should be forever sealed against the disclosure of things necessarily communicated to him for the better conducting his cause, *pendente lite:* but this privilege, in all the cases which have fallen under my observation, has been strictly confined to the period in which the suit has been *pending*, and to the party of record, or in interest; and where the substance of the communication was such that it becamo necessary for the attorney to know it in order to manage the suit. And this distinction seems to give a clue to that which is said to be the origin of the law; which is, that in early days, suitors brought in person their complaints before the *King*, and afterwards his court; that as business increased, the administration of justice approximating to a science, and the necessity of forms sensibly felt, it became absolutely necessary that there should be a set of men to stand in the place of suitors, called attorneys, and manage their causes; to encourage which, and bring the same into practice, it also became necessary for courts to adopt a rule, by way of pledge to suitors, that their secret and confidential communications to their attorneys should not be drawn form them, either with or without the consent of such attorney. But this rule is not to be extended to all the subjects or conversations which a client may have with his attorney, nor to any period but that from his retainer to the termination of the suit: for tho' an important communication may be made as to the subject matter, after the ending of the suit, yet the attorney must give it in testimony if required. As in *Colden* vs. *Kendrick*, 4 *T. R.* 431, which was after a compromise between the parties and *Colden's* paying a part of the demand and giving a warrant to confess a judgment for the balance. *Kendrick* told *Allen*, his attorney, he was glad the suit was settled, for the bill grew out of a lottery transaction, which he knew at the time he purchased it. Upon *Colden's* bringing an action to recover back the amount paid, *Allen* was held a good witness to show *Kendrick's* acknowledgment.

Any matter of fact the knowledge of which the attorney had, other than from his client, the attorney is bound to disclose. *Spencely* vs. *Schulenburgh*, 7 *East*, 357. And so of directions

given by an attorney, which any person of prudence and forethought would have directed. *Bramwell* vs. *Lucas*, 9 *Com. Law Rep.* 233.—*Bull. N. P.* 284. And where an attorney is retained generally, and a conversation is had upon a subject which afterwards gives rise to a suit, the attorney is bound to disclose it, there being no suit in contemplation when the conversation was had; and it was so ruled in the exchequer of *Ireland* in the case *Annesly* vs. *the Earl of Anglesey, McNall.* 241.

I have before observed, that the privilege is that of the party, and not of the attorney; that the attorney is *in loco* of the client; and reasoning upon the principle of cause and effect, the privilege attaches only to the attorney who is to stand in the court to manage, or participate in managing, the cause; or, at least, was originally so: and upon no other principle can we reconcile the same privilege not attaching where other professional men are consulted. But in the *Dutchess of Kingston's case*, who was prosecuted for bigamy, her surgeon was directed to testify, though he objected, saying, that whatever he might know, came to his knowledge confidentially, whilst in the exercise of professional service and trust. And a catholic clergyman, being called as a witness, said he knew nothing but what was communicated to him in confidence, whilst in the discharge of his clerical duties; yet, Sir *Michael Smith* directed him to be sworn. But this is extending the inquiry farther than is necessary for the determination of this case; inasmuch as *Story*, the witness called, was not an attorney of record; neither had he been retained by either plaintiff or defendant: and if retained by *Ferguson*, it does not appear, from what the witness said, that he was retained in any wise to defeat *Ferguson's* deed to *Hardy*: and we are not to infer a fraud, on the part of *Ferguson*, who it appears was both out of the record and out of interest. The offer of counsel to prove by *Story* was, that just before the attachment was made, he carried a written communication from *Ferguson* to *Dixon*, containing information of the deed to *Hardy*, and that *Story* also informed *Dixon* of that deed. *Story* said, "that at the time in question, he was retained by *Ferguson in that business*, and that whatever message or information he might have conveyed from *Ferguson* to *Dixon*, was conveyed and given in the exercise of professional trust and confidence." The question might well be asked, "*in what business* retained?" The language implies no business but the carrying the letter, a knowledge of its contents, and informing *Dixon* of *Hardy's* deed. This surely is what any one might have done: no scientific knowledge was necessary to carry a letter, to know its contents, and to inform *Dixon*, that *Hardy* had a

CALEDONIA, *March*, 1829.

Dixon *vs.* Parmelee.

deed of the land: and this was all proposed to be shewn by the witness; and was not only gratuitous as respected *Dixon*, but was clearly a transaction of that ordinary cast, that *Ferguson*, had he been in court, would not have wished to conceal, though *Story* had some scruples about it. *Dixon* might wish to conceal it: it was his interest to do so. But *Story* was not the attorney of *Dixon*.

This case clearly falls within the letter and spirit of *Bramwell* vs. *Lucas and others;* and the witness ought to have testified; and the Court think a new trial ought to be granted, for *Story's* testimony having been excluded. As to the witness, *Nichols*, his testimony was properly admitted.

New trial granted.

HUTCHINSON, J. delivered the following concurrent opinion. —The last exception urged by the defendant's counsel is removed by the record now produced. It seems that the plaintiff read to the jury the copy of the town clerk's record of the execution and the officer's return of the levy, and neglected to show the recording in the county clerk's office, otherwise than by the assertion of the officer in the body of his return, which could not then be true, for that return could not be recorded before it was completed ready for record. It seems that the defendant, at the close of the argument, requested the court to charge the jury that the plaintiff's title was defective for want of showing this last recording. The court refused so to charge, because it was out of time. Probably the county court were conscious that if the objection had been taken when the evidence was adduced, it might have been removed forthwith by the production of the record. It is not necessary now to decide whether the county court were correct in this or not, for, the county court records being now before the Court for their inspection, the recording is regular. This being, as was suggested by *Mr. J. Prentiss*, during the argument, not a matter *in pais* to be submitted to the jury, but a record that is conclusive of the fact to be proved by it, there can be no use in sending the cause back for another trial. This point is not new. On the trial of the cause, *Elijah Paine* vs. *S. Hathaway et al.** the plaintiff produced the county clerk's copy of the execution and levy, with a copy of the town clerk's certificate that he had recorded the original execution. This was admitted, and exception taken. On a hearing in the Supreme Court, the first term, I was with the Court in *Franklin* county; the original was produced, and the objection considered thereby removed.

*See 1 Vermont Reports, 101.

I fully concur in the opinion now delivered upon the other point. It seems the defendant, on trial, attempted to defend by showing the plaintiff's attachment, and execution and levy, fraudulent and void. It is not now apparent whether the defendant would have added other testimony had he succeeded in showing the plaintiff's knowledge of the deed to *Hardy* from *Ferguson* or not. That would be proper in showing the whole fraudulent, and any other proof in the power of the defendant might have been deficient without this. If the defendant relied upon this knowledge of the plaintiff before his attachment as sufficient of itself to avoid the levy, the question slightly alluded to by the plaintiff's counsel then arises, whether this alone would avail; for if it was of no avail, it ought not to be admitted. I would not, for one, decide against its sufficiency on so narrow an investigation as the point has now undergone. We know between creditors striving to secure their honest debts, the first in time is first in right. We also know that a purchaser, otherwise *bona fide*, cannot hold against an unrecorded deed of which he had knowledge at the time of his purchase. I recollect of hearing more than once of a suggestion of the late *Chief Justice Chipman*, that an attaching creditor could hold against an unrecorded deed, of which he had knowledge, as well as against another attachment of which he had knowledge that it was pursuing the same property. But I cannot learn that this subject was ever argued before him, or decided by him, or any other court in this state, nor do I recollect of ever reading any thing that would warrant any such decision. And were I to decide without further authorities, I should say, if the plaintiff had knowledge of the deed from *Ferguson* to *Hardy*, before his attachment, his attachment could no more prevail against that deed, than could a deed of a later date from *Ferguson* to the plaintiff, with the like knowledge.

The defendant was deprived of this testimony by the privilege allowed the witness, *Story*, not to disclose the secrets of his client. And he claimed to have received his knowledge from *Ferguson*, and to have done what he did, which is now attempted to be proved, as attorney to him. The extent of the privilege of an attorney in such a case results from the nature of his profession and business. Every person in difficulty about his intercourse with society occasionally wants advice. In order to obtain this advice, the secrets of the whole transaction must be divulged to the attorney or counsellor. And many need advice in the beginning: how extensive must be their disclosure, before correct advice can be obtained. In every case the heart must be opened to a free and full development of every thing connected with the

Caledonia, *March*, 1829.

Dixon *vs.* Parmelee.

transaction. This perfect confidence is a necessary step towards obtaining correct advice. This development must not be disclosed to the injury of the client. It is not the privilege of the attorney, but of his client, who might be ruined if his attorney could be compelled to testify what was thus revealed to him by his client in the confidence which their relation afforded. Hence the attorney must not be compelled to testify, to the prejudice of his client, what he thus learnt from his client. In all the cases cited the testimony was sought from the attorney to operate against his client. The case in the 9th of *Common Law Reports* was a dispute most directly between the creditors generally of the bankrupt, and the creditors who had attached the property. But it also bore upon the bankrupt himself who was the client. The fact wanted to be proved was an act of bankruptcy, which is considered in some sense a crime there. It also might have an effect upon the after privileges of the bankrupt, if the question were decided one way or the other. The attorney was there compelled to testify to a question asked by his client, which question, under the circumstances attending it, amounted to a disclosure of the intent with which he tarried two hours in the attorney's office, to wit, to shut himself from his creditors. In one of the cases cited, *Ld. Ellenborough* says, the attorney must not testify to the secrets of his client, though the client be not before the court. The reason is, because his client may be prejudiced in some other way.

But here the case seems turned about. The witness was not attorney to the plaintiff, but to *Ferguson*, the debtor of the plaintiff, and who had before conveyed the premises to *Hardy*. The defendant, claiming under *Hardy*, wants to prove that the plaintiff had knowledge of that deed prior to his attachment. The very circumstance that the exemption of the witness is now claimed, while he was only attorney to *Ferguson*, and not to plaintiff, almost proves a fraudulent connivance of *Ferguson* to induce the attachment of the plaintiff, and defeat the deed to *Hardy*. It shows there was something that must be kept secret. And the witness says he was attorney for *Ferguson* in that business. What business? What had *Ferguson* to do with what was going on? Nothing, unless to be the passive debtor till some suit should be brought that he wished to defend. But *Story*, when asked if he carried a letter from *Ferguson* to the plaintiff informing of the deed to *Hardy*, and when asked if he himself informed the plaintiff of that deed, claims that what he did in that business, he did as attorney to *Ferguson*. When we ask what *Ferguson* had to do with this business that required the advice and assistance of an attorney, who should claim the privilege of concealing the mat-

CALEDONIA,
March,
1829.

Dixon
vs.
Parmelee.

ter ? Conjecture finds no stopping place short of a fraudulent attachment by the plaintiff, conceived and put in operation by *Ferguson* himself.

But what did the defendant wish to prove that would come within the exemption in any view whatever ? All he wanted to prove was, that the plaintiff knew of *Ferguson's* deed to *Hardy*, before he made his attachment. If the witness knew that the plaintiff possessed this knowledge, there is but one fact I have been able to call to mind that would excuse him from testifying : that is, his receiving that knowledge from the plaintiff himself while acting as his attorney. If the witness had told the plaintiff of that deed, it is of no consequence how the witness came by his knowledge. If the questions proposed to the witness were so broad as to include matters to which he ought not to testify, yet that would not excuse him from testifying to so much as was not within the exemption. His being attorney to *Ferguson* could never exempt him from testifying that the plaintiff, before his attachment, knew of the deed from *Ferguson* to *Hardy* ; that he had such information about it as now proves correct. I fully concur in reversing the judgment of the county court, and granting a newtrial.

*Shaw* and *Fletcher*, for plaintiff.

*Bell* and *Cushman*, for defendant.