the following opinion of the court was delivered by
Judge Roane.
This is a bill brought by the appellant against the appellees J. C. Carter and Afifihia his wife, and their children, as also, among others, against the representatives of Edward. Carter, the trustee named in a deed of settlement, of April 5th, 1784, from Wm. Faunileroy, the father of the said Afifihia, That deed conveyed certain negroes to the said trustee, for the use of the said Afifihia for life, free from the controul of her husband and his creditors, and, after her death, to the use of all her children who should be then living. The bill was brought, after the appellant had obtained a judgment at law *284 against the said J. C. Carter, upon a bond, of April 12th 1784, given by him to Hudson Muse, and assigned to the appellant, and after the said Carter had taken the oath of an insolvent debtor, under an execution sued out upon the said judgment. Its object is to set aside the deed aforesaid, in favour of the said appellant, and subject the negroes, thereby conveyed, to the payment of the debt aforesaid, on the ground that he was a creditor of the said J. C. Carter, and that, on his marriage with the said Afifihia, in 1782, the said slaves had been delivered to him, under a parol gift thereof, by the said William Fauntleroy. The bill' also prays a decree against three of the sons of the said Carter and wife; on the ground of an alleged agreement on their parts to pay the debt in question. •
The decisions of the Court of Appeals, upon the true construction of the act of 1758, for preventing fraudulent gifts of slaves, having declared void all such gifts, made prior to the act of 1787, as were not evidenced by a deed, although possession of the slaves given may have been delivered to the donee; the present claim can only be set up, on the ground of the appellant having been a creditor of the donee J. C. Carter, and that his possession of the slaves aforesaid, under the gift, either singly taken, or in connexion of acts .of ownership on his part, and of consent or connivance on the part of the donor, ought, in a controversy between the latter, or volunteers claiming under him,, and the creditors of the former, to give them the preference. Where such possession has actually taken place under the parol gift, it is a matter of great importance to decide, of what character that possession must be, in relation to its tendency to deceive.the donee’s creditors, and what acts of ownership, or of consent and connivance as aforesaid, (if a possession singly is not sufficient,) and whether all the said circumstances, conjunctly taken, are adequate to produce the effect above mentioned. But if no possession is shewn to have taken place under such gift, these important enquiries are unnecessary to be gone into. There would then be no foundation on which the claim of the creditor can be erected. In *285 such case, it is also unimportant, for the same reason, to en-quire, whether the party was a creditor of the donee, or not, prior to the delivery of the deed attempted to be impeached, or whether that circumstance be important.
None of these enquiries will now be gone into by this court. It is unnecessary, because there is no adequate proof, in the cause, that the appellee, J. C. Carter ever had possession of the negroes in question, under the parol gift before mentioned.
However the case, on this point, might have stood, if the deposition of Richard Parker should be sustained, it is clear that, if that deposition be withdrawn from the cause, the answers of the appellees J. C. Carter and his wife (which on this point of possession are strictly responsive to the bill,) must preponderate. There is, afterwards, nothing but circumstances to be opposed to those answers.
As for the witness, Mr. Parker, he admits that he was a practising attorney at the time ; that it was in that character that he drew the deed in question, and expected to receive a fee for drawing it. This is not only admitted by him, but it results from the nature of the application, that it was in this character that he was applied to, and retained. He was applied to by Mr. Fauntleroy, to draw such a deed as would settle the negroes on the appellee Afifihia, and exempt them from liability to her husband’s creditors. The preparing such a deed necessarily required some degee of legal knowledge ; and it might not be, that a person wholly unskilled in the law would be competent to draw it. While we say this, it is by no means intended to be admitted, that, where an attorney is retained and consulted, his right to disclose his client’s secrets depends, at all, on the difficulty or clearness of the case submitted. A compliance with Mr. Fauntleroy’s request in this instance necessarily required the facts to be by him stated, on which the attorney’s judgment was to turn : and the fact then disclosed, touching the delivery under the parol gift, was all-important, in forming a right conclusion on the subject. Being thus important, it is wholly immaterial whether it was disclosed by way of answer to an *286 enquiry of the attorney, or was spontaneously mentioned by his client. But, if the fact were even unimportant, it makes no difference as to the principle now in question. It is enough that it was communicated by the client, in a professional consultation with his counsel. As to the exception set up from the general rule, in this case, on the ground of the publicity of the conversation in which the disclosure was made; while it does not' follow that, because there might have been many persons in the court-house at the time, they were so unengaged as to have attended to this conversation, this publicity only shews an indiscretion on the part' of Mr. Fauntleroy. We must not, in relation to a fact of a highly confidential nature, and strictly applying to the question submitted, embark in a field of uncertainty and conjecture, and, without any certain scale to go by, undertake to decide, from the place and manner of the conversation, that this fact was not disclosed in confidence. It is safer, and more conducive to that free intercourse which should exist between a client , and his attorney, to consider all communications confidential, which fall within the description just mentioned: unless, indeed, the client should seem to vaunt his disclosures to the public, and, as it were, challenge the by-standers to heat? them. Whatever opinion the witness, Mr.. Parker, may, therefore,have entertained, as to his not being bound to secrecy, either because there was no cause depending in court at the time, and in which he was employed; because his counsel or advice was not, literally, ásked for in the case ; or on account of the place and manner in which the conversation was held; this court differs in opinion from him upon all these points, and, in respect to the disclosed fact now in question, holds him to have been an incompetent witness.
This court understands it to be the settled law, that counsel and attornies ought not to be permitted to give evidence of facts imparted to them, by their clients, when acting in their professional character; that they are considered as identified with their clients, and, of necessity, entrusted with their secrets, which, therefore, without a dangerous breach of ©onfidence, eannot be revealed; that this obligation of *287 secrecy continues always, and is the privilege of the client, and not of the attorney. The court is also of opinion, that this restriction is not confined t.o facts disclosed, in relation to suits actually depending at the time, but extends to all cases in which a client applies, as aforesaid, to his counsel or at-j torney, for his aid in the line of his profession. If the principle was confined to causes actually depending at the time, there would be no safety for a person consulting counsel as to the expediency of bringing a suit, or of compromising one which is contemplated to be brought against him. When such suit should be afterwards instituted, all his disclosures, previously made, with a view to obtain counsel and avoid litigation, would be given in evidence against him! The same necessity exists in both cases; and there is in principle, no difference between them. With respect to the persons who are subject to this restraint, the court is of opinion, that it is confined to the two descriptions of persons before mentioned. (1.) As to causes depending in'court, a client can only have an interest in their services, for they, alone, will be permitted to represent him: and, as to counsel or advice obtained in other cases, these are the only safe depositories of a client’s interests, under the care our law has taken to confide the functions in question only to men of probity and legal knowledge. The policy of the law, in the respect last mentioned, would be violated, were any citizen to be permitted to invest ad libitum, and without necessity, any other citizen, however corrupt or unqualified, with the functions aforesaid. That investiture would also carry with it the high privilege now in question, which, too, only arises from the necessity men are under to act, in their legal concerns, through skilful and qualified agents.
As to the objection of the appellant’s counsel, that the deed of settlement, in question, was not delivered ; — without deciding whether, under the actual circumstances of this *288 case> that delivery would be presumed to have been made, or nob the court is of «pinion that this fact is neither chargecl in the bill, nor put in issue by the pleadings. It is not even c^arSe<i under a general allegation that the said deed was void; but the -bill, not denying that the deed was good in itself, takes the ground, that its effect on the property therein embraced was lost, as to the claim of the appellant, by means of the anterior and collateral circumstances which are relied on in his favour. The court also concurs in opinion with the appellee’s counsel, that this defect in the charging part of the bill is not supplied by a subsequent interrogatory, which calls for information on the subject of its delivery.
With respect to the alleged agreement on the part of three of J. C. Goner’s sons, it is probable that their answers, denying the obligation thereof, ought not to be taken as a denial of the agreement itself; — both because such denial is rather their inference, than a positive negation of a fact, and because, in their answers, they refer to the very letter which is alleged to contain that agreement. The question then recurs, — was the promise therein contained consummated by the agreement of both parties ? — and was that promise founded upon an adequate consideration ?• While the court is at least doubtful whether the former was the fact, in this case, it does not see that there was any agreement or consideration, moving from the appellant to the sons, which would prevent their promisé from being considered nude. However the letters contained in the record may have bound the appellant, in the event of an arrangement by J. C. Carter, and in relation to Mm, we see nothing binding him to forbearance, or the like, in the event of an assumption by the sons. On this ground the case is also with the appellees: and the court is of opinion, that, independently of the objection arising from the want of consideration as aforesaid, the appellant comes with a bad grace into a court of equity, asking a decree against third persons, Who were induced to make the promise relied on, only by his repre *289 sentations, which now appear to us to have been unfounded and delusive.
Ou these grounds the court is of opinion to affirm the decree before us. I am also instructed to say, that the judges are unanimous in the opinion now delivered ; with the exception, that one of them does not, on the testimony, consider the disclosure, made to Mr. Parker, to have been confidential. That judge, however, authorizes me to say, that if Mr. Parker's deposition had been sustained by the court, he would, nevertheless, have been of opinion £o affirm the decree.

 Note, by Judge Roane. It was admitted by all the judges in-conference, that the privilege equally applied to interpreters acting as tlu: organ of communication between the client and his attornev.