## McINTYRE *v.* COSTELLO *et al.*

*(Supreme Court, General Term, First Department.   July 9, 1889.)*

1. EVIDENCE—DECLARATIONS—OF OWNER TO IMPEACH TITLE.
    In an action by a widow for dower in lands conveyed by her husband during coverture, the defense was that the husband purchased the property solely for the use and benefit of his sister, who paid the entire consideration, and that he took the title in his own name, without her knowledge, and contrary to her instructions. *Held,* that it was error to admit evidence of declarations made by the husband be-

fore the property was conveyed to him, tending to show that the property was bought for the sister and with her money, though the declarations were not such as would destroy the husband's title, but merely tended to explain its character.

2. WITNESS—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.

The attorney who drew the contract between the husband and his grantor testified that he was counsel for the parties to the contract; that he represented both the husband and his grantor,—that is, he represented the person for whom the husband was acting, though he never saw the sister in the matter; that the husband paid him. *Held*, that evidence of declarations made by the husband to the attorney at interviews, with reference to the contract of purchase and deed, prior to the acquisition of title, and of a conversation subsequent to that time, in which he spoke of the property as his sister's, and asked the attorney to prepare a deed to his grantee, was inadmissible, under Code Civil Proc. N. Y. § 835, prohibiting an attorney from disclosing communications made to him by his client in the course of his professional employment.

Appeal from circuit court, New York county.

Action by Catherine McIntyre against Patrick Costello and others to recover dower. From a judgment entered on a verdict directed for defendants, plaintiff appeals. Code Civil Proc. § 835, provides that "an attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment."

Argued before VAN BRUNT, P. J., and MACOMBER and BARTLETT, JJ.

*L. Laflin Kellogg*, for appellant. *Lewis Sanders*, for the Carrolls and the German Savings Bank, respondents. *James P. Campbell*, (*Alex. Thain*, of counsel,) for Patrick Costello, respondent.

BARTLETT, J. This is an action by the widow of Charles McIntyre to recover dower in a certain lot of land which was conveyed to him by Theodore Ploeger on June 1, 1871, after his marriage to the plaintiff, and of which he remained seised until September 11, 1871, when it was conveyed to one Charles McDonald. The wife joined in the conveyance, but was less than 19 years old at the time, and hence claims that her execution of the deed did not operate to release her right of dower. Subsequently the lot was conveyed by Charles McDonald to Patrick Costello. The defense is that this lot, and two others which were purchased by Charles McIntyre at the same time, were acquired by him not for his own benefit, but solely for the use and in behalf of his sister Margaret Costello, wife of Patrick Costello, who paid the entire consideration; and that McIntyre acted in the transaction and took title in his own name contrary to the instructions of his sister, and without her knowledge and consent, and obtained only a naked paper title to the premises in suit, which he held for the benefit of Mrs. Costello. As has already been stated, he retained the title to this particular lot from June 1 to September 11, 1871, but the other two lots purchased at the same time were conveyed by him on the same day (June 1, 1871) to Mrs. Costello, the plaintiff also joining in that conveyance. The infancy of the plaintiff at the time she executed the deed to McDonald was not questioned. This deed contained a covenant of seisin on the part of her husband. All the purchase money appears to have been paid by him by means of checks upon his own bank. He also paid the interest upon the purchase-money mortgage, which he gave to his grantor, Mr. Ploeger, for a period of three years after he bought. In the opinion of the learned judge who presided at the trial, the *prima facie* case thus made out was apparently wholly overcome by proof of declarations on the part of the plaintiff's husband to the effect that he bought the property in question for his sister, and with her money. This view might be correct, if all the evidence of such declarations which was received had been competent; but much of it was inadmissible.

In the case of *Dodge* v. *Trust Co.*, 93 U. S. 379, 383, the declarations of a party in possession of land are said to be competent evidence "only to show the character of the possession of the person making them, and by what title he holds, but not to sustain or to destroy the record title;" and all the cases cited by Mr. Justice HUNT in support of this rule are New York decisions.

Assuming that the declarations of McIntyre were not such as would destroy his own title, but merely tended to explain its character, they should have been confined to a period when the title was actually in him. The greater part of the testimony as to his declarations, however, relates to what he said before the property was conveyed to him. This evidence was received under objection and exception in behalf of the plaintiff, and was incompetent. *Hutchins* v. *Hutchins*, 98 N. Y. 56, 64. In the case cited, which was an ejectment suit, one Phineas Hutchins had acquired certain lands from the defendant by warranty deed, and had conveyed them to the plaintiff. At the time of the trial, Phineas Hutchins being dead, the defendant was allowed to prove certain declarations made by him before he had taken title to the premises, tending to show that the deed was intended to be, not an absolute conveyance, but a mortgage in trust. The defendant succeeded on the trial, but the court of appeals reversed the judgment, saying, in regard to this testimony: "The evidence of declarations made by Phineas Hutchins before he acquired title to the property, as to what he intended or wanted to do when he should acquire it, and his motive in acquiring it, were, we think, inadmissible as against the plaintiff. It is only where the party making the declarations has, at the time of making them, the title to the property, that such declarations bind his successor in interest. We are not referred to any authority holding that declarations made before or after that time have that effect." It is true that, even if we strike out of the case all proof of McIntyre's declarations prior to the time when he acquired title to the premises which are the subject of this suit, there will still remain some evidence of other statements made by him, while holding the property, to the effect that his sister was the beneficial owner. This evidence, however, is not so conclusive as to warrant a withdrawal of the issues from the jury. It is to be considered by the jury and given its due weight in determining what was the real nature of the husband's ownership, as against the evidence furnished by the record title and the other proof in behalf of the plaintiff which has already been mentioned.

A considerable part of the testimony as to declarations by the plaintiff's husband was given by Mr. James P. Campbell, a lawyer, who was professionally employed in reference to the original transfer of the lots from Ploeger to McIntyre. "I was counsel," he testified, "for Mr. McIntyre and Mr. Ploeger to draw up the contract and prepare the papers and deeds." He afterwards endeavored to qualify this statement by saying: "I represented both McIntyre and Mr. Ploeger; that is, I represented the person for whom Mr. McIntyre was transacting the business,—that is, the sister." But he added: "I never saw the sister in the matter. McIntyre personally paid me for my services. I was McIntyre's general counsel. My recollection is that the payment for my services came from him." After this, and against the objection and exception of the plaintiff's counsel that the witness was incompetent under the statute, (Code Civil. Proc. § 835,) Mr. Campbell was permitted to testify, not only to declarations made by McIntyre to him, at interviews with reference to the contract of purchase and the deed, prior to the time when McIntyre acquired the title, but also to a conversation subsequent to that time in which he spoke of the lot as Mrs. Costello's lot, and said he had obtained a purchaser for it in the person of Charles McDonald, and instructed the witness to prepare the deed to McDonald which was subsequently executed. I think it clear that McIntyre was Mr. Campbell's client; that the statement to the effect that the lot belonged to Mrs. Costello was made to him in the course of his professional employment; and that he was prohibited from disclosing it by the provisions of section 835 of the Code of Civil Procedure. See *Root* v. *Wright*, 84 N. Y. 72, 76. The judgment should be reversed, and a new trial granted, with costs to appellants to abide event. All concur.