CATHARINE McINTYRE, Appellant, *v.* PATRICK COSTELLO *et al.*, Respondents.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Evidence. Declarations.*—The declarations of a grantor bind his grantee, only where he, at the time of making them, has the title to the property affected by them. Those made, either before or after, that time, do not have that effect.
2. *Same.*—Where, after striking out the declarations of a grantor, which merely tend to explain the character of, but not to destroy, his title, made prior to the time he acquired such title, the remaining evidence of other statements made by him, while holding the property, to the effect that another party than himself was then the beneficial owner, if not so conclusive as to warrant a withdrawal of the issues from the jury, is to be considered, and given its due weight, by them in determining what was the real nature of the grantor's ownership, as against the evidence furnished by the record title, and the other proof on behalf of the grantee.
3. *Same. Attorney.*—An attorney is prohibited by section 835 of the code from disclosing any communications, made to him by his client in the course of his professional employment.
See note at end of case.

Appeal from a judgment entered upon a verdict directed by the court in favor of the defendants.

*L. Laflin Kellogg*, for appellant.

*Lewis Sanders* and *Alex. Train*, for respondents.

BARTLETT. J.—This is an action by the widow of Charles McIntyre to recover dower in a certain lot of land which was conveyed to him by Theodore Ploeger, on June 1, 1871, after his marriage to the plaintiff, and of which he remained seized until September 11, 1871, when it was conveyed to one Charles McDonald. The wife joined in the conveyance, but was less than nineteen years old at the time, and hence claims that the execution of the deed did not operate to release her right of dower. Subsequently the lot was conveyed by Charles McDonald to Patrick Costello. The defense is that this lot, and two others which were purchased by Charles McIntyre at the same time, were acquired by him not for his own benefit, but solely for the use and in behalf of his sister, Margaret Costello, wife of Patrick Costello, who paid the entire consideration ; and that McIntyre acted in the transaction and took title in his own name contrary to the instructions of his sister, and without her knowledge and consent, and obtained only a naked paper title to the premises in suit, which he held for the benefit of Mrs. Costello. As has already been stated, he retained the title to this particular lot from June 1 to September 11, 1871, but the other two lots purchased at the same time, were conveyed by him on the same day, June 1, 1871, to Mrs. Costello, the plaintiff also joining in that conveyance.

The infancy of the plaintiff at the time she executed the deed to McDonald was not questioned. This deed contained a covenant of seizin on the part of her husband. All the purchase money appears to have been paid by him by means of checks upon his own bank. He also paid the interest upon the purchase-money mortgage which he gave to his grantor, Mr. Ploeger, for a period of three years after he bought.

In the opinion of the learned judge who presided at the trial, the *prima facie* case thus made out was apparently wholly overcome by proof of declarations on the part of the plaintiff's husband to the effect that he bought the property in question for his sister, and with her money. This view might be correct, if all the evidence of such declarations which was received had been competent; but much of it was inadmissible.

In the case of Dodge *v.* Freedman's Savings and Trust Co. (93 U. S. 379, 383), the declarations of a party in possession of land, are said to be competent evidence " only to show the character of the possession of the person making them, and by what title he holds, but not to sustain or to destroy the record title; " and all the cases cited by Mr. Justice HUNT, in support of this rule, are New York decisions. Assuming that the declarations of McIntyre were not such as would destroy his own title, but merely tended to explain its character, they should have been confined to a period when the title was actually in him. The greater part of the testimony as to his declarations, however, relates to what he said before the property was conveyed to him. This evidence was received under objection and exception in behalf of the plaintiff, and was incompetent. Hutchins *v.* Hutchins (98 N. Y. 56, 64). In the case cited, which was an ejectment suit, one Phineas Hutchins had acquired certain lands from the defendant by warranty deed, and had conveyed them to the plaintiff. At the time of the trial, Phineas Hutchins being dead, the defendant was allowed to prove certain declarations made by him before he had taken title to the premises, tending to show that the deed was intended to be not an absolute conveyance, but a mortgage in trust. The defendant succeeded on the trial but the court of appeals reversed the judgment, saying in regard to this testimony : " The evidence of declarations made by Phineas Hutchins, before he acquired title to the property, as to what he intended or wanted to do when

he should acquire it, and his motive in acquiring it, were, we think, inadmissible as against the plaintiff. It is only where the party making the declarations, has, at the time of making them, the title to the property, that such declarations bind his successor in interest. We are not referred to any authority holding that declarations made before or after that time have that effect."

It is true that even if we strike out of the case all proof of McIntyre's declarations prior to the time when he acquired title to the premises which are the subject of this suit, there will still remain some evidence of other statements made by him, while holding the property, to the effect that his sister was the beneficial owner. This evidence, however, is not so conclusive as to warrant a withdrawal of the issues from the jury. It is to be considered by the jury, and given its due weight in determining what was the real nature of the husband's ownership, as against the evidence furnished by the record title, and the other proof in behalf of the plaintiff which has already been mentioned.

A considerable part of the testimony, as to declarations by the plaintiff's husband, was given by Mr. James P. Campbell, a lawyer, who was professionally employed in reference to the original transfer of the lots from Ploeger to McIntyre. " I was counsel," he testified, " for Mr. McIntyre and Mr. Ploeger, to draw up the contract and prepare the papers and deeds." He afterwards endeavored to qualify this statement by saying : " I represented both McIntyre and Mr. Ploeger ; that is, I represented the person for whom Mr. McIntyre was transacting the business, that is the sister ;" but he added : " I never saw the sister in the matter. McIntyre, personally paid me for my services. I was McIntyre's general counsel. My recollection is that the payment for my services came from him." After this, and against the objection and exception of the plaintiff's counsel, that the witness was incompetent under the statute

(Code Civ. Pro., § 835), Mr. Campbell was permitted to testify not only to declarations made by McIntyre to him, at interviews with reference to the contract of purchase and the deed, prior to the time when McIntyre acquired the title, but also to a conversation subsequent to that time, in which he spoke of the lot as Mrs. Costello's lot, and said he had obtained a purchaser for it in the person of Charles McDonald, and instructed the witness to prepare the deed to McDonald, which was subsequently executed.

I think it clear that McIntyre was Mr. Campbell's client; that the statement to the effect that the lot belonged to Mrs. Costello was made to him in the course of his professional employment, and that he was prohibited from disclosing it by the provisions of section 835 of the Code of Civil Procedure. See Root *v.* Wright, 84 N. Y. 72, 76.

The judgment should be reversed and a new trial granted, with costs to appellants to abide event.

VAN BRUNT, Ch. J., and MACOMBER, J. concur.

---

NOTE ON " SECTION 835 OF THE CODE."

*Extent.*—Before § 835 of the Code can apply in any case, the contract relation of attorney and client must exist, based upon an employment by the client. Haulenbeek *v.* McGibbon, 60 Hun, 26 ; Renihan *v.* Dannin, 103 N. Y. 579. It is not enough that the communication be confidential, the fact of professional employment must also exist. Id.; Rochester City Bank *v.* Suydam, 5 How. 258. The privilege does not apply to cases, where the party applied to, though an attorney, refuses to act as such, and is, therefore, only applied to as a friend. Haulenbeek *v.* McGibbon, *ante.*

Where the relation of attorney and client does not exist between the witness and the party, by reason of his express refusal to have anything to do with the matter, a case for the application of the rule of privilege does not arise. Id.

Upon no subject are the decisions more directly conflicting than as to the extent of this privilege. To reconcile them is impossible. It is not difficult, however, to ascertain the source of the conflict, nor to determine, with reasonable precision, the true limits of the rule. The cases on the

subject may be divided into two classes. A mere cursory examination will show that the divergence between them rose entirely out of the difference as to the real foundation of the rule. Whiting *v.* Barney, 30 N. Y. 330.

In ancient times, parties litigant were in the habit of coming into court and prosecuting or defending their suits in person. Subsequently as lawsuits multiplied, and the modes of judicial proceeding became more complex and formal, it became necessary to have suits conducted by persons skilled in the laws and in the practice of the courts. This necessity gave rise, at an early day, to the class of attorneys. To facilitate the business of the court it was important that such men should be employed. But, as' parties were not obliged to testify in their own cases, and could not be compelled to disclose facts known only to themselves, they would hesitate to employ professional men and make the necessary disclosures to them, if the facts thus communicated were within the reach of their opponent. To encourage the employment of attorneys, it became indispensable, therefore, to extend to them the immunity enjoyed by the party. Id.; Annesley *v.* Earl of Angelsea, 17 How. St. Trials, 1139; Dixon *v.* Parmelee, 2 Verm. 185.

If this is the true foundation of the rule, it follows that the protection is confined to communications made with a view to the conduct of a suit, or some judicial proceeding, and it goes most forcibly to confirm and strengthen the direct authority that, in the earlier cases, and while the origin of the rule was most likely to be kept in view, the doctrine seems to have had this application. Berd *v.* Lovelace, Cary's Report, 88; Austin *v.* Vasey, Id. 89; Kilway *v.* Kilway, Id. 126; Denio *v.* Codington, Id. 143; Waldron *v.* Ward, Stiles, 449 ; Sparks *v.* Middleton, 1 Keble, 405; Curtis *v.* Pickering, 1 Vent. 197; Vaillant *v.* Dodermead, 2 Atkyns, 524; Wadsworth *v.* Hamshaw, 2 Brod. & Bing. 5; Williams *v.* Mundie, 1 Ry. & Moo. 31; Broad *v.* Pitt, 3 Car. & Pa. 418 ; Duffin *v.* Smith, Peak. N. P. C. 103.

There is another class of cases still more numerous, which indicates a different doctrine, viz.: that the privilege has no special relation to suits in court or judicial proceedings of any kind, but extends to every case where a member of the legal profession is consulted or employed professionally. Whiting *v.* Barney, *ante.* These cases have assumed that the idea of the betrayal of confidence, or breach of that obligation, which all men recognize, to preserve inviolate a secret confided, lies at its foundation. It is upon this assumption, mainly, if not entirely, that the courts have ever extended the privilege beyond what is necessary to accomplish its original object, viz.: to protect those having business before the courts in the employment of skilled men to transact it. Id.

The social obligation, faithfully to guard against revealing that which is communicated in confidence, cannot, by possibility, have any logical connection with the rule in question. That obligation relates solely to a voluntary disclosure, and can have nothing whatever to do with the policy of the law, in its efforts to ascertain truth and administer justice. Id.

The privilege in question is not founded upon any idea of the sacred-

ness of confidential communications whether made to an attorney or to any other person; nor upon any peculiar policy of the law which distinguishes the general business of an attorney from that of any other class in the community; but it was the result of that rule of the common law, which excused parties from testifying in their own cases, and of the necessity, for the convenience of the public, as well as the benefit of suiters, of having the business of the courts conducted by professional men.  Id.

The protection was held, in Whiting *v.* Barney, *ante*, only to extend to such communications as have relation to some suit or other judicial proceeding, either existing or contemplated.

Every communication which a client makes to his legal adviser, for the purpose of professional aid or advice upon the subject of his right and liabilities, is protected.  Bacon *v.* Frisbie, 80 N. Y. 394.

In this case, an action was brought to recover damages for an alleged conspiracy to defraud.  An attorney was called as a witness and allowed to testify, under objection, and exception, to communications made to him by one Ratnour.  Prior to the admission of this evidence, it was shown that the witness was at the time engaged in the practice of law, and was also carrying on a wholesale liquor store.  He had done a good deal of law business for Ratnour, had given him legal advice before and after said communications, and gave his opinion as a lawyer upon the case presented. The communications were made to the attorney in his store.  No fee was paid.  There was no general retainer, and no suit was then pending. The attorney testified that he did not consider that Ratnour was advising with him, as counsel at the time.  It was held that the evidence as to the communications was improperly received.   Though the attorney disclaimed on the trial that he acted in a professional capacity, this was a matter for the court to determine from the facts.  It matters not that he paid no immediate fee ; nor that suit was not then pending or then contemplated.   Communications made to an attorney in the course of any professional employment, relating to the subject thereof, and which may be supposed to be drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence, and entitled to protection as privileged communications.  Id. ; Williams *v.* Fitch, 18 N. Y. 551.  All communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether they relate to a suit pending or contemplated, or to any other matter proper for such advice or aid.  Bacon *v.* Frisbie, *ante ;* Britton *v.* Lorenz, 45 N. Y. 51.  Whenever the communication made relates to a matter so connected with the employment as attorney or counsel as to afford presumption that it was the ground of the address by the client, then *it is* privileged from disclosure.  Bacon *v.* Frisbie, *ante.*

The principle, upon which these communications are protected from disclosure, applies to *every attempt to give them in evidence, without the assent thereto of the person making them.*  Id.  This principle is, that he who seeks aid or advice from a lawyer ought to be altogether free from the dread that his secret will be uncovered, to the end that he may speak

freely and fully all that is in his mind. The principle is not wholly kept, if what is thus said may be told without his assent, though to the immediate harm or help of another only. In such case, the disclosure is made, and he has it in his power no longer to stay it from use by any in strife with him. It may not, indeed, be put in evidence directly against him to his immediate harm, but that secret, the knowledge of which was confined to him and his adviser, has become matter of common knowledge, and may be the cause of his harm. The effect may not be so direct and immediate, yet, it is a possible effect, and the foreseen possibility would press upon his lips, when in consultation with his legal advisor, nearly as heavily as though testimony of what he showed to his counsel could be called out in evidence against himself. Id. A branch of the rule, to wit : that the communication is to be inviolate, though no suit is begun or contemplated, shows that, though there is no present opportunity for the use of evidence of it against him, the communication is made under the seal of professional confidence. And it is only a further natural growth of the rule, that the communication is to be privileged from being put in evidence for or against another, lest it, by means of the knowledge of it thus given, be used to his harm for the sustaining or defense of a suit thereafter begun, in which he may be made a party. Id. And where the client has not been made party to the action, and so has no right to be at the trial and object, the objection will lie in the mouth of any party. By such objection, the latter only calls upon the court to keep untouched a rule of public policy, made and to be kept, not especially for his good, but for that of all men. The rule is in the nature of that which excludes evidence, when the production of it will be prejudicial to the public interest. Id.

The rule that an attorney cannot disclose communications made to him by his clients, is not confined to communications made in contemplation, or in the progress, of an action or judicial proceeding, but extends to communications in reference to all matters which are the proper subject of professional employment. Root v. Wright, 84 N. Y. 72 ; Williams v. Fitch, ante ; Yates v. Olmsted, 56 Id. 632. The rule prohibiting such disclosure still exists, notwithstanding the change in the law permitting a party to an action to be examined as a witness on his own behalf, or at the instance of the adverse parties, and is made a part of the statute law by § 835 of the Code. Root v. Wright, ante. Whether or not an attorney, employed as the common attorney of two or more parties to give advice in a matter in which they are mutually interested, can, on a litigation subsequently arising between them, be examined at the instance of one of the parties as to communications made when he was acting as the attorney for both, it is settled that he cannot disclose such communication in a controversy between such parties and a third person. Where parties, having diverse or hostile interests or claims, which are the subject of controversy, unite in submitting the matter to a common attorney for his advice, they exhibit, in the strongest manner, their confidence in the attorney consulted. Id. The law encourages such efforts for an amicable arrangement of differences and public policy and the interests of justice are subserved by placing such

communications under the seal of professional confidence, to the extent, at least, of protecting them against disclosure by the attorney at the instance of third parties. Id.

Confidential communications between attorney and client, concerning the matter to which the retainer relates, are not to be disclosed in court, unless the client waives his privilege. Coveney *v.* Tannahill, 1 Hill, 33. The mode in which the information is communicated, whether by an oral statement of facts, or by delivering a written instrument, is immaterial. The principle is the same in whatever way the information passes. The policy of the law allows a man to make the best defense in his power. Whatever may be his delinquency, he is permitted to confer freely with his counsel, and to place in his hands any paper touching the matter in question, without the peril of having his confidence betrayed under the form of law. Id. The attorney may be called to prove the existence of a paper, and that it is in his possession, for the purpose of enabling the other party to give parol evidence of its contents. But he cannot be compelled to produce or disclose the contents of a paper which has been deposited with him by his client. Id.; Brandt *v.* Klien, 17 John, 335 ; Jackson *v.* McVey, 18 Id. 330.

This privilege of the client does not extend to every fact which the attorney may learn in the course of his employment. There is a difference, in principle, between communications, made by the client and acts done by him in the presence of the attorney. It is sound policy to close the attorney's mouth in relation to the former, but, in many cases, it would be grossly immoral to do so in the latter. It is the privilege of one who is charged with a wrong, either public or private, to speak unreservedly with his counsel in preparing for his defense. But he should not be allowed to stop the mouth of one who was present when the wrong was done, upon the allegation that he was retained as counsel to see or aid in the transaction. Coveney *v.* Tannahill, *ante.* There can be no such relation as that of attorney and client, either in the commission of a crime, or the doing of a wrong, by force or fraud, to the individual. The privileged relation of attorney and client can only exist for lawful and honest purposes. Id.

Where the original ground of communication is *malum in se*, for instance, when the attorney is consulted on an intention to commit a forgery or perjury, it can never be included, within the compass of professional confidence. It is equally contrary to his duty in his profession, as a citizen, and as a man. But if such offense, committed without his being privy, comes to his knowledge in the course of confidential transactions with his client in the way of business, he shall not be compelled to assist in proving it. Id.

An attorney, who is present at a transaction, in the way of business, between his client and a third person, is not privileged as to what then passed. Id. In all cases of alleged privileged communications, it is for the court, when the facts are disclosed, and not for the witness, to decide whether it is or is not privileged. Id.

Note on " Section 835 of the Code."

In this case, an account stated, containing a written acknowledgment of a balance due the defendant from a firm, was introduced in evidence to charge all the partners, though it was signed by one alone. The other partners set up that it was signed in fraud of their rights, after an injunction had been served upon their copartner, restraining him from interfering with the partnership accounts. The plaintiff's counsel was called by the defendants and asked whether he was present when the account stated was signed, when and where it was signed, and who were present. It was held that the matters propounded did not come within the rule as to privileged communications, and that the attorney was bound to disclose all that was said or done between plaintiff and the copartner, as far as it was pertinent to the issue.

It is not necessary that a man should have an attorney to witness his dealings with third persons, as the adjustment of an account, the execution of a deed, the payment of a sum of money, the giving up of security, or the like. And if one is called in, there is no reason why he, like any other person who was present, should not be sworn to prove what was done. Id.

The attorney may be called against his client to prove a deed, to which he is a subscribing witness. He has no privilege in giving evidence of collateral facts. He is bound to disclose all that passed at the time, respecting the execution of the instrument, but not what took place in the concoction and preparation of the deed, or at any other time, and not connected with its execution. Upon such matters, he has a right to be silent. Id. He may disclose that he was sent by his client with orders to put the judgment in execution, for this is an act. But he is not to disclose the private conversation as to the deed, with regard to what was communicated as the reason for making it. Id. He may be required to prove his client's handwriting, though his knowledge of it was acquired solely from seeing him sign the bail bond. The attorney, in Johnson v. Daverne, 19 John, 134, had acquired a knowledge of his client's handwriting after the retainer, but without any confidential communication, and it was held that he was bound to testify.

An attorney may be required to make discovery of a deed intrusted to him by his client, by answering whether there was such a deed, where it is, to whom delivered, when he last saw it and in whose custody ; but not to produce the deed or discover its contents. Coveney v. Tannahill, ante. If the question is about an erasure in a deed or will, he may be examined to the question whether he has ever seen such deed or will in other condition, for that is a fact of his own knowledge ; but he will not be permitted to disclose any confessions his client may have made to him on such subject. If an attorney is present when his client is sworn to an answer, he will be a witness, upon an indictment for perjury, to prove the fact of taking the oath. It is a fact in his own knowledge, and no matter of secrecy committed to him by his client. Id. These instances, showing that the attorney may be called to identify his client as the person who has sworn to an answer, to prove a deed to which the attorney is a subscribing

witness, or to prove the handwriting of his client, all stand on the ground that the knowledge of the attorney was not acquired as a secret from his client.

If a client consults counsel beforehand as to the means, expediency or consequences of committing a fraud, his communications may, perhaps, be privileged. They are clearly so as to what he may have said to counsel since the wrong was done. But the attorney may be required to disclose whatever act was done in his presence toward the perpetration of the fraud. One who is charged with having done an injury to another, either in his person, his fame or his property, may freely communicate with his counsel, without the danger of having his confidence betrayed through any legal agency. But when he is not disclosing what has already happened, but is actually engaged in committing the wrong, he can have no privileged witness. Id.

An attorney cannot be compelled either to produce or to disclose the contents of a paper which he has received from his client, even though the paper may be required as a foundation for a public prosecution. Id. The principle is, that all confidential communications between attorney and client, whether written or oral, are alike privileged. If a party, at any particular time, delivers or exhibits an account to his attorney, without the evidence of a settlement endorsed upon it, it is the same thing, in substance, as though he has, at that time, told him verbally that he has an account in that condition. The one form of communication is as much privileged as the other. Id.

There is no solid distinction between the oral statement of a fact to counsel, and a communication of the same fact, by delivering to him a deed or other written instrument. Id.

In Althouse v. Wells, 40 Hun, 336, an action was brought to recover damages for slanderous words uttered by defendant to an attorney-at-law. The latter was acting as an agent and attorney for the executor of an estate in which the defendant was interested. The alleged slander consisted in charging plaintiff with having stolen $80 in gold belonging to the estate, and requesting the attorney to collect it. Defendant, upon the trial, objected to the attorney testifying as to what he had said to him, upon the ground that, as he was interested in the estate, his statement and request were privileged as a confidential communication made to his attorney. It was held that the objection was untenable. The relation of attorney and client did not exist between the defendant and the attorney for the estate.

In Mulford v. Muller, 1 Keyes, 31, an attorney recovered judgment against the city of Brooklyn. He received the money due on the judgment from the comptroller of the city, in the character of attorney for Cassidy. He testified that he had no authority from plaintiffs to receive the money, that he acted under the directions of Cassidy in collecting the judgment and that Cassidy directed him not to pay the money, he received upon the judgment, to the plaintiffs, and threatened to sue him if he should pay such money to them. And it was held that such directions and conversa-

tion, touching the collection of the judgment and the disposition of the money received thereon, were not covered by the seal of professional confidence.

In Hampton *v.* Boylan, 46 Hun, 151, it was held that the communication and advice, which are privileged under § 835 of the Code, pertain to the subject-matter, and not to the fact of employment as an attorney. Otherwise, it would be impossible to determine whether the attorney was acting in the course of his professional employment.

A communication to an attorney, in reference to his client's personal estate, made upon retaining him to draw an affidavit for the purpose of procuring a reduction of the assessment of such estate, was held in Williams *v.* Fitch, *ante*, to be privileged. Communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence and entitled to protection as privileged communications. Id. In Bank of Utica *v.* Merserau 3 Barb. Ch. 595, this principle was applied to conversations with an attorney, who was employed to draw a warrant of attorney. The communication tended to show that the judgment was confessed for the purpose of defrauding creditors. In Parker *v.* Carter, 4 Munf. 273, the privilege was held to include communications made to an attorney employed to draw a deed.

In Yates *v.* Olmsted, *ante*, communication between attorney and client in reference to all matters which are the proper subject of professional employment, were held to be privileged.

The competency of attorneys and counsel to testify as to communications made to them, and matters that they had learned in the course of their professional employment, has been extensively discussed by the courts of this state, and the cases involving that question thoroughly examined. Britton *v.* Lorenz, *ante* ; Whiting *v.* Barney, *ante* ; Coveney *v.* Tannahill, *ante* ; Bank of Utica *v.* Merserau, 3 Barb. Ch. 533. The rule deducible from the authorities is, that all communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether such advice relates to a suit pending, or contemplated, or to any other matter proper for such advice or aid ; and that, where the communications are made in the presence of all the parties to the controversy, they are not privileged, but the evidence is competent between such parties. Id. This exception includes a case where the communications were made by the plaintiff's assignor in trust for creditors, in the presence of the defendant, to the attorney employed to draw the papers between them. Id.

In Eastman *v.* Kelley, 49 Hun, 607, an action was brought by judgment creditors to reach certain interests alleged to be held by one of the defendants, in property standing in the name of another of the defendants. The attorney for the plaintiff in this action had been attorney for each of the defendants and was for at least two of them at the time of the transaction which resulted in the title being taken by said defendant. He was asked upon the trial whether he had information of such a character as to create

the belief in his mind that the judgment debtor was a joint owner of the property. It was held that this information, acquired by the witness through his professional relations with the defendants, was incompetent.

Before § 835 of the Code can apply in any case, a contract relation of attorney and client must, it seems, exist based upon an employment by the client. Renihan *v.* Dennin, *ante.*

It was held in Mitchell's Case, 12 Abb. 249, that the enactment of the law making a party compellable to testify as a witness, operated as an abrogation of the doctrine that had before prevailed respecting the inviolability of the confidence between attorney and client.

This decision is put upon the ground that the exemption of the attorney from the necessity of testifying was never regarded as his personal privilege, but as existing purely for the protection of his client ; that he was in this respect considered as one and the same person with his client.

The privilege of the attorney seems to be co-extensive with that of the client.

Attorneys who hold the papers of their clients cannot be compelled, under a subpœna *duces tecum,* to produce them in a controversy between third persons, except where their clients would be compelled.

Whatever might have been the law applicable to this subject between the passage of the act permitting parties to be witnesses and the enactment of § 835 of the Code, the privilege now exists substantially as it did before the enactment of the first mentioned law. Matter of Hoyt, 7 Civ. Pro. 374.

Communications between a person and one who has formerly acted as attorney for him, in respect to the matter in which he has so acted, and arising therefrom, are privileged. Myers *v.* Dorman, 34 Hun, 115.

Evidence given by an attorney professionally employed by plaintiff's husband on the occasion of a transfer of property to him, as to declarations made by him in regard to the character of his ownership, was held, in McIntyre *v.* Costello, 53 Hun, 636, to be incompetent under § 835 of the Code.

§ 835 of the Code does not shield the party from a disclosure by him of the facts relating to his delivery to his attorney of letters which are a legitimate subject of inquiry. Chellis *v.* Chapman, 52 Hun, 613.

§ 835 of the Code is a mere codification of the common law rule on the subject as established in this state at the time of its adoption. Matter of McCarthy, 55 Hun, 7. When and by whom its protection may be invoked must be determined by the circumstances of each case as it arises. It is necessary, in order to bring a case within the rule of the statute, that it should appear that the communication sought to be proved was confidential, and made to one acting in the capacity of attorney or counsellor. The general rule deducible from the authorities was formulated and adopted in Britton *v.* Lorenz, *ante.* Under that rule, it has been uniformly held that a communication made by a client to his counsel in the presence of third parties, whether they were strangers or not to the subject matter of the communication, are competent. Matter of McCarthy, *ante ;* Whiting *v.* Barney, *ante.*

Note on " Section 835 of the Code."

A witness who is examined under a commission, issued out of a court of a foreign country, will not be required to answer questions relating to letters in his possession, written by the party to the foreign controversy, where such letters were received by him, in his capacity as attorney for one of such foreign litigants, in an action brought in this state. Matter of Whitlock, 51 Hun, 351.

It is not an answer to this claim for protection from their enforced disclosure, that the statute in this state, relating to such disclosure by a client to his counsel, does not exist in the foreign country, where the testimony, sought by such commission, is to be used. Id. It is sufficient that it appears that an officer of the court, upon whom silence is enjoined, is called upon to violate his oath of office and the statute. The evil of permitting such testimony to be given is instant upon its disclosure before the commission, when it becomes at once a matter of public record, and is not dependent, in any respect, upon the use to which it may ultimately be put on the trial of the action in which it is sought to be used. Id.

In taking the testimony of citizens or residents of this state, to be used elsewhere, the practice of the courts has ordinarily been, and is, not to interfere with the course of the examination, so long as no public rights are invaded and no positive statute is violated, leaving the reception or rejection of the testimony to the rules as they shall be administered in the foreign jurisdiction at the time of the trial. But an exception to the rule is presented where, should the attorney be compelled to answer such questions, he would be required to disclose the very secrets which the statute was intended to protect, and which the public is so deeply interested in preserving. Id.

In this case, the witness had certain letters in his possession, written by one of the foreign litigants, who had never been his client. The purpose sought to be attained by their production was to discover the basis of the claim of the witness' client, in the action pending in the courts of this state. These letters did not have any bearing upon the issues in the action in the foreign court. And it was held that, under the circumstances, the witness should not be required to produce them, though they did not involve any question of professional privilege.

Where both parties are present, at the time when a communication is made by one of them to his attorney or counsel, there is nothing confidential in the communication. Whiting v. Barney, ante.

Where an attorney is called in by one party to witness a transaction in the way of business, with a third person, his mouth is not closed either to what he saw or heard. It is not in the nature of a confidential communication between an attorney and client. Id.

In Rosenburg v. Rosenburg, 40 Hun, 91, the decedent consulted with a lawyer, and had an assignment to his son prepared. Before it was executed, his son visited the office, and the assignment and counterpart were executed in the presence of both parties, acknowledged before the attorney as a notary public and delivered in his presence.

And it was held that the testimony of the attorney as to these matters did not relate to a confidential communication which would be excluded

under the provisions of § 835 of the Code. Where both parties select the attorney as the person before whom they will make their respective acknowledgments, and the fact of delivery cannot be completed without the action of both, any person, who witnesses it, can prove the delivery. The provisions of said section are not applicable. Id.; Westover *v.* Ins. Co., 99 N. Y. 56; Whiting *v.* Barney, *ante;* Hebbard *v* Haughian, 70 Id. 54; Sherman *v.* Scott, 27 Hun, 331; Coveney *v.* Tannahill, *ante.*

When an attorney is acting for two clients, his communications were held, in Sherman *v.* Scott, *ante,* not to be privileged in a subsequent litigation arising between the representatives of the said clients.

While the communications, which a client makes to his legal adviser, for the purpose of professional aid or advice, are privileged under the provisions of the Code, the joint statements, made by the parties in the presence and hearing of each other, to an attorney, are not privileged. Hurlburt *v.* Hurlburt, 50 Hun, 600. In an action between them, in such case, neither can exclude the testimony of the attorney upon the ground that the statements made to him were confidential, and for the purpose of professional advice, for the reason that they were made in the presence and hearing of the other party to the action and were consequently not privileged or confidential. The fact that the parties are dead, and that the action is now maintained by their personal representatives, does not change the question as to the admissibility of the evidence. Id. This question has been so decided in the cases of Sherman *v.* Scott, *ante ;* Rosenburg *v.* Rosenburg, *ante ;* see also, Whiting *v.* Barney, *ante ;* Hebbard *v.* Haughian, *ante ;* Root *v.* Wright, *ante.*

An attorney, who has been applied to by a party to draw a deed for him, and also for counsel in regard to matters relating to the subject-matter of the deed, was held in Barry *v.* Coville, 53 Hun, 620, to be incompetent to testify to communications made to him in such matter, in an action between the grantor and a third party.

An attorney employed to draw a deed is competent to testify as to the directions received by him from the parties, and as to the transaction between them at the time. Hebbard *v.* Haughian, *ante.* Knowledge, acquired under such circumstances, is not within the class of privileged communications. The facts are within his own knowledge, acquired in the transaction of the business between the parties, but they were not communicated to him as an attorney to enable him to perform his duties to a client. Id.

The testimony of an attorney as to statements which each party openly made to the other, and which betrayed no confidence imposed in him, was held, in Matter of Hicks, 47 Hun, 637, to be competent.

In Barry *v.* Coville, 53 Hun, 620, it was held that an attorney can be permitted to testify that he was employed to draw a deed, but not as to matters relating to the subject matter thereof.

Communications to an attorney are not privileged when both parties were present. Smith *v.* Crego, 54 Hun, 22.

Testimony of an attorney that he drew a deed at his client's request and

took his acknowledgment, was held, in Greer *v.* Greer, 58 Hun, 251, not to be privileged, where the transaction took place in the presence of the grantee.

An attorney, by becoming a party to a mortgage, loses his privilege, and is bound to testify in respect to its execution and the consideration upon which it was executed, the same as any witness. Foster *v.* Wilkinson, 37 Hun, 242. A client is privileged from testifying to transactions and communications with his counsel as to which his counsel is privileged. It would be a strange rule, which should permit attorney and client to enter into mutual contracts and be exempt from testifying as to their consideration and validity, when attacked by creditors. Id. Such a rule will enable persons to perpetrate the grossest frauds without the possibility of detection. When an attorney witnesses a contract by or to his client, he is bound to testify in respect to it. Id. Acting as *particep criminis*, and not in the true relationship of attorney and client, he is bound to produce the documents concocted between him and his client. § 835 of the Code is but an affirmation of the common-law rule, and has not extended the privilege to such a case. Id.

In Bartiett *v.* Bunn, 56 Hun, 507, it was held that, where the communications made by the party to his attorney were intended to be communicated to the other party, they lose their privileged character, and the attorney is not precluded from testifying thereto by § 835 of the Code.

*Waiver.*—The prohibition of § 836 of the Code may be waived by the client, and, when the communication is made for the purpose of its publication or communication to another, and this section provides expressly for such waiver. See Matter of Coleman, 111 N. Y. 220.

A client may waive the privilege conferred by § 835 of the Code, and does waive it by calling his attorney to testify to the conversation. Smith *v.* Crego, *ante.*

It was always the law that if a party avails himself of the testimony of his own attorney, the opposite party became entitled to cross-examination. Matter of Hoyt, 7 C. W. Pro. 374. So a party was never permitted, after opening the door of inquiry wide enough to get what he wanted from his attorney, to shut it in the face of a cross-examiner. By a parity of reasoning, a party who has subpœnaed his own attorney to produce papers, may fairly enough be treated as having thereby given the right to his adversary, in case such papers should be produced pursuant to the subpœna and be discovered to be pertinent to the issue of the controversy, to put the same in evidence. Matter of Hoyt, *ante.*

§ 835 provides that " an attorney or counsellor-at-law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment." § 836 provides that " the last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing, the patient or client." It is thus seen that clergymen, physicians and attorneys are not only absolutely prohibited from making the disclosures mentioned, but that, by an entirely new section, it is provided

that the seal of the law placed upon such disclosures can be removed only by the express waiver of the persons mentioned. Westover v. Ætna L. Ins. Co., 99 N. Y. 56. Thus there does not seem to be left any room for construction. The sections are absolute and unqualified. These provisions of law are founded upon public policy. In all cases, where they apply, the seal of the law must forever remain, in case of attorney and client, until it is removed by the client. Id.; Edington v. Mut. L. Ins. Co., 67 N. Y. 185; Same v. Ætna Life Ins. Co., 77 Id. 564; Pierson v. People, 79 Id. 424; Grattan v. Mut. L. Ins. Co., 80 Id. 281.

The protection given by the law to such communications does not cease with the termination of the suit, or other litigation or business in which they were made. It is not affected by the party ceasing to employ the attorney and retaining another, nor by any change of relation between them. nor by the death of the client. The seal of the law once fixed upon them remains forever, unless removed by the party himself, in whose favor it was there placed. It is not removed without the client's consent, even though the interests of criminal justice may seem to require the production of the evidence. Though the privilege of the client may be waived by him, the evidence of the waiver must be distinct and unequivocal. Id. The purpose of the laws would be thwarted, and the policy, intended to be promoted thereby, defeated, if death removed the seal of secrecy from the communications and disclosures which a client should make to his attorney. Whenever the evidence comes within the purview of the statutes, it is absolutely prohibited. It may be objected to by any one, unless it is waived by the person for whose benefit and protection the statutes were enacted. After one has gone to the grave, the living are not permitted to impair his fame and disgrace his memory by dragging, to the light, communications and disclosures made under the seal of the statutes. Id. An executor or administrator does not represent the deceased for the purpose of making such waiver. If one representing the property of a client, can waive the seal of the statute, because he represents the property, the right to make the waiver would exist as well before as after death, and a general assignee, for the purpose of protecting the assigned estate could make the waiver. But it has been held that an assignee in bankruptcy is not empowered to consent that the professional communications of the assignor shall be disclosed. See Bowman v. Norton, 5 C. & P. 177.

The personal representative or assignee can make the objection to evidence forbidden by the statute. Edington v. Mut. L. Ins. Co., ante. Any party to an action can make the objection, as the evidence in itself is objectionable, unless the objection is waived by the client.

The statute admits of no other construction than that, where the evidence comes within the prohibition of the statute, its reception, if objected to, can be justified only when the client waives the protection the statute gives him. Westover v. Ætna L. Ins. Co., ante. *

Where the statutory prohibition against the disclosure, by an attorney, of information has been expressly waived by the client, and the waiver acted upon, it cannot be recalled. The information is then open to the

consideration of the entire public, and the client is not privileged to forbid its repetition. McKinney *v.* Grant St. etc., R. R. Co., 104 N. Y. 352.

After its publication no further injury can be inflicted upon the rights and interests which the statute was intended to protect, and there is no further reason for its enforcement. The nature of the information is of such a character that when it is once divulged in legal proceedings, it cannot be again hidden or concealed. The consent, having been once given and acted upon, cannot be recalled, and the privileged person cannot again raise the objection.

The object of the statute having been voluntarily defeated by the party for whose benefit it was enacted, there can be no reason for its continued enforcement in such case.

The object of § 836 of the Code was chiefly to declare the effect of a waiver of the statutory rule, and by whom such waiver may be made. Matter of Austin, 42 Hun, 516. § 835 of the Code was not intended to do more than classify, by codification, the well-known rule of the common law. Id.; Hebbard *v.* Houghian, *ante;* Armstrong *v.* People, 70 N. Y. 38.

The decisions are conflicting as to whether the attorney is prohibited from disclosing instructions made to him by the testator, in order to draft his will.

Communications by a testator to an attorney to prepare a will, with reference to the will and its trusts, are not privileged. Matter of Austin, *ante.* It will be unfortunate for testators, if the communications they make to counsel, for the purpose of enabling the latter to draft their wills, are held to be so far within the provisions of the Code as to prevent their use, on behalf of the executors, to sustain them. Id. The object of the privilege is to make sacred that class of communications made by clients to attorney or counsel, for the purpose of enabling them to give advice, with full and correct knowledge relating to the transactions upon which such advice is sought, in suits and actions, civil and criminal, a disclosure of which might be prejudicial to the client or his interests. Id. If such testimony is held to be within the purview of the statute, it is not perceived how any will can be proved by the attorney who drew it and supervised its publication. He cannot open his mouth as a witness without disclosing something in the nature of a communication made to him by his client. The code does not place such a weapon for the defeat of wills in the hands of those seeking to overthrow a will propounded for probate, which presumably it was the intention of the testator should be sustained by the testimony of his counsel and adviser who prepared it. Id.

Evidence of the attorney who drew the will as to communications made to him by the testator, not in the presence of the subscribing witnesses or any third person, relating to the distribution of testator's property, was held, in Matter of McCarthy, Sup. Ct. Apr., 1891, to be admissible in proceedings to probate the will.

In the Matter of Boury, Sup. Ct. May, 1887, it was held that, on the probate of a will, the attorney who drew the will can properly testify to

Note on " Section 835 of the Code."

the facts; and that the declarations of the disceased in respect to the execution and accompanying it, are admissible, and not within the principle of disclosures between attorney and client.

The draughtman of a will, though he is an attorney, is not incompetent, under § 835 of the Code, to testify, in support of the will, to the instructions received from the testator in respect to the provisions to be incorporated in the will. Matter of Chase, 41 Hun, 303; Sheridan v. Houghton, 16 Id. 628; aff'd 84 N. Y. 643; Matter of Chapman, *ante;* Whelpley v. Loder, 1 Dem. 368; Hebbard v. Houghian, *ante.*

If an attorney or counsel, who has drawn a will or advised testator upon it, accepts a retainer to contest its probate, he cannot claim a privilege from testifying as a witness at the instance of the proponents. Sheridan v. Houghton, *ante;* 6 Abb. N. C 234.

·The privilege is meant to protect the living in their business relations, and cannot be invoked when the question arises as to the intention of a deceased person, in respect to the disposition of his estate. Whelpley v. Loder, *ante;* Staunton v. Parker, 19 Hun, 55.

Any act or word of the testator to his attorney on the subject of his will, or its execution, is improperly proved by the attorney himself. Matter of O'Neil, Sur. Ct. Oct., 1889. Communications from client to attorney necessary for the business in hand are inadmissible. Such communications may be the act of the client, as well as words spoken by him. Practically, all that a man may say to an attorney, who is employed by him to draw his will and to superintend its execution, upon that subject, and all that he may say to anybody else in the attorney's presence and hearing at the time, cannot be lawfully disclosed by the attorney. The only exception is, when the attorney is the subscribing witness to the will. Id.

The circumstance that the conversation was had in the presence of the subscribing witness indicates very clearly that there was no thought on the part of the testator of its being confidential. Matter of McCarthy, 55 Hun, 7. Instructions from the testator to prepare a will are not confidential. They are intended to be communicated to the heirs-at-law, legatees and devises named therein, and to the public whenever, after his death, the will. should be offered for probate. Id.

It may often happen that a party, in conversation with his counsel for the purpose of making and preparing a will, may communicate many things of a confidential character which the counsel would not be permitted to disclose. But all the instructions received by him, and all the acts of the testator connected with the making and execution of the will, which tend to uphold and support the instrument, may be proved by the person who assisted him in preparing it, though, at that time, he was acting as the legal adviser of the testator. Id.

The prohibition of § 835 of the Code is positive and unequivocal, and makes no exceptions as to the class of cases to which it shall apply. It must, therefore, necessarily apply to testamentary cases as well as to any others, unless the plain provisions of the section are to be repealed by judicial legislation. They require no construction, but are plain and ex-

plicit, and condemn the admission of such testimony.    Mason *v.* Williams, 53 Hun, 398.

A lawyer, in receiving the directions or instructions of one intending to make a will, is confided in by reason of his professional character as a counsellor, and he acts in that capacity, although, asking no questions and giving no advice, he does nothing more than to reduce those directions to writing.    Loder *v.* Whelpley, 111 N. Y. 239.

In Matter of Coleman, 111 N. Y. 220, the witnesses were a firm of lawyers employed by the testator in their professional capacity to draw a will They testified to conversations had by them respectively with the testator at the time of receiving instructions in reference to the draft of the will offered for probate, and another drawn by them about two years previously. The conversations were had for the purpose of enabling them to execute the instructions of the testator.    The interviews were had in pursuance of and under the sanction of a professional employment.    It was held that communications, made by a client under such circumstances to his attorney, were clearly within the protection of the statute.    They were inadmissible as evidence, unless brought within the provisions of § 836 of the Code, authorizing their disclosure.    By that section, a pledge of secrecy imposed by the statute is to be observed, unless its provisions are expressly waived by the client.    There is nothing in the section requiring the waiver to be made in writing, or in any particular form or manner, or at any particular time or place.    But is is required to be an express waiver, and made in such a manner as to show that the testator intended to exempt the witnesses, in the particular instance, from the prohibition imposed by the statute.    Id.

Where the attorney is requested to sign the attestation clause of the will as witness thereto, this is an express waiver, within the meaning of § 836 of the Code, of the pledge of secrecy so imposed, and authorizes the disclosure.    Id.    This request implies, not only information as to the necessity of such signatures to the validity of the instrument executed, but also knowledge of the obligation which they assume in respect to the proof thereof after his death.    He must have been aware that his object in making a will might be made ineffectual, unless these witnesses can be called to testify to the circumstances attending its execution, including the condition of his mental faculties at that time.    It would be contrary to settled rules of law to ascribe to the testator an intention, while making his will and going through the form required to make it a valid instrument, to leave in operation the provisions of a statute which he had power to waive, but which, if not waived, might frustrate and defeat the whole object of his action.    Id.    If a client in his lifetime should call his attorney as a witness in a legal proceeding, to testify to transactions which had taken place between himself and his attorney, while they occupied the relation of attorney and client, such an act would be held to constitute an express waiver of the seal of secrecy imposed by the statute.    And it will be no less a waiver, when the client has left written and oral evidence of his desire that his attorney should testify to facts, learned through their professional rela-

Note on " Section 835 of the Code."

tions, upon a judicial proceeding to take place after his death. Id. ; Mc-
Kinney *v.* G. Street, etc., R. R. Co., 104 N. Y. 352. The act of a testator,
in requesting his attorneys to become witnesses to his will, leaves no doubt
as to his intention thereby to exempt them from the operation of the
statute, and leave them free to perform the duties of the office assigned
them, unrestrained by any objection which he had power to remove. Id;
Matter of Coleman, *ante.*

One employed and acting as a legal adviser of a testator, who becomes a
subscribing witness to the latter's will, was held in Matter of Elston, 5
Dem. 154, to be competent, under § 835 of the Code, to testify to facts re-
lating to the question of due execution. Though he is employed and act-
ing as the legal adviser of the testator, when the latter requests him to
become a subscribing witness to the will, he is thereby placed by the
testator in another relation to himself than that of attorney and client,
and another duty is imposed upon him, the very nature of which neces-
sitates publicity. The duty imposed upon him, as a subscribing witness,
is outside of and disconnected from any duty growing out of the other re-
lation of attorney and client,.and concerning which he is not only at liberty,
but in duty bound, to testify. The courts have even gone further, and
held that communications to an attorney, employed to prepare a will, with
reference to the will and its trusts, are not privileged. Id.; Matter of
Austin, *ante.*

Where an attorney subscribes to a deed as a witness, and takes
the acknowledgment of the same, the grantor does not thereby waive his
privilege and remove the disability to testify. Rousseau *v.* Bleau, 60 Hun,
259. In Matter of McCarthy, *ante,* the attorney was the subscrib-
ing witness to a will which he had drawn for the testator. The court, in
substance, held that, by making to attorney one of the subscribing wit-
nesses, she had waived the privilege and made him a competent witness to
testify to what occurred at the time of its execution. This case is clearly
distinguishable from that of Rousseau *v.* Bleau, *ante.*

In the case of a witness to a will, the testator is presumed to know that
by having the attorney subscribe the will as a witness, he necessarily be-
comes a witness on its presentation for proof, and that the will cannot be
admitted to probate and become operative without the testimony of the
witness as to the transactions and communications between the testator
and witness at the time of its execution. But in the case of a deed, the
official certificate or acknowledgment proves it without production, or ex-
amination of the subscribing witness. On its acknowledgment, the neces-
sity for the production of the subscribing witness ceases. As the pre-
sumption of the necessity for the examination of the witness no longer
exists, no waiver of the privilege can, therefore, be presumed. Id.

In Matter of Chapman, *ante,* probate of a will was contested upon the
ground that a mistake had been made in respect to a piece of real estate
specifically devised thereby. Testator had intended to embody, in the will,
a prior will and a codicil thereto. The attorney was alleged to have made
the mistake complained of in attempting to do this. He had in his pos-

16

session the prior will with the signature of the testator torn therefrom, but declined to produce it upon the ground that he received it as a confidential communication from his client, and that as such it was privileged. It was held that the surrogate erred in refusing to compel him to produce it. While it is quite true that the seal fixed by the law upon confidential communications to professional men is not removed by the death of the party, yet the rule is not to be so far extended as to permit a failure of justice. On an allegation of fraud, forgery or mistake, instructions received by an attorney for drawing a will are not privileged communications, within any just and proper construction or understanding of the rule of law. Id.; Sheridan *v.* Houghton, *ante.*