DANIEL W. HIGBEE *vs.* SAMUEL T. DRESSER & another.

In an action by the indorsee against the makers of a promissory note, an attorney at law, called as a witness by the defendants, was allowed, against the objection of the plaintiff and of himself, to testify that he received a letter from the payee of the note, containing a claim for intoxicating liquors against the defendants; that he advised his correspondent to get a promissory note on time signed by the defendants, and to indorse it, for value, before it was due, to an innocent third person; and that he afterwards received the note in suit from the plaintiff. The plaintiff also produced at the request of the defendants, but against his own objection, the letter to the attorney, which stated that the defendants owed the payee a running account for intoxicating liquors furnished to them in Wisconsin. *Held*, that the admission of the attorney's testimony and of the letter was a violation of the rule excluding privileged communications between attorney and client.

CONTRACT upon a promissory note on ninety days, made by the defendants, Samuel T. Dresser and John C. Newcomb, doing business under the name of Dresser & Newcomb, to Darius R. Brant and John H. Peck, (who were traders in Chicago, under the name of Brant & Company,) or their order, dated February 7, 1867, and transferred to the plaintiff by Brant and Peck by indorsement bearing the same date, without recourse to them. Writ dated April 18, 1868.

At the trial in the superior court, before *Rockwell*, J., the defendants called as a witness John C. Abbott, an attorney at law

residing in Lowell, who was allowed to testify, against the ob-
jection of the defendants, that he received a letter from Brant
& Company containing a claim against the defendants; and
that he had an interview with the defendant Dresser, and Dres-
ser refused to pay the claim, which was for intoxicating liquor.
It appeared that the note in suit was afterwards given in settle-
ment of the claim.   Abbott, upon being asked, objected to tes-
tify what advice he gave to Brant & Company, unless the judge
should rule that it was not privileged.   The judge allowed him
to testify, and he testified, that, after receiving the letter, he
advised Brant & Company to get a promissory note on time
signed by the defendants, and transfer it to an innocent party
for value before due; that, after this, he received the note in suit
in a letter from the plaintiff; that he had an interview with
Dresser about the note, and Dresser refused to pay it; and that
afterwards he received other letters from the plaintiff concerning
the note.   The defendants notified the plaintiff to produce at
the trial the letter of Brant & Company to Abbott, and also the
letters of the plaintiff to him.   The plaintiff produced the let-
ters, under objection; and objected to their being put in evi-
dence, as being privileged communications; but the judge
allowed them to be put in evidence.

The material part of the letter from Brant & Company was
as follows: " Chicago, March 29, 1867.   A Mr. Samuel T.
Dresser, of your city, owes us a balance of a running liquor bill
or account created and made while running a saloon in Wau-
kegan, Wisconsin, in company with John C. Newcomb, of
$245.35, besides some $15 of interest.   Newcomb, his partner
here, says by their settlement Dresser was to pay our debt,
about which there is no dispute, and that Dresser is well off
and perfectly able to pay, and took away from here with him
some two or three thousand dollars and deceived him, as he was
to pay our claim before he left.   We desire you to look him up,
(he is a saloon and billiard man in Lowell,) and present our
demand, and if he pays you, well, and if not, let us hear from
you per return mail, and we will forward the account.   Please
see if you cannot get him to acknowledge the debt and make it
at once, and let us hear at your earliest convenience."

The first letter from the plaintiff was as follows : " Chicago, May 18, 1867. I have written two letters, dated respectively April 13 and May 6; the first containing a promissory note signed by Dresser & Newcomb, transferred by the payees, Brant & Company, to myself for $262.14. In each letter I requested an immediate answer; if you have not received the same please let me know at once. Inform me also as to the responsibility of Dresser & Newcomb." The second letter was as follows: " Chicago, °March 9, 1868. I today sent a letter to John Davis asking him to collect that note against Dresser & Newcomb, which I hope you will be kind enough to hand over, together with what information you may have on the matter."

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*J. Davis*, for the plaintiff.

*C. A. F. Swan*, for the defendants.

AMES, J. The case finds that Brant and Peck, who were traders residing in Chicago, sent a letter by mail to the witness Abbott, an attorney at law residing at Lowell, for the purpose of consulting or employing him as such, in the collection of a debt which they alleged to be due to them from the defendant; and that he, in answer to their letter, gave them some advice as to the best mode of proceeding in order to accomplish that object. No other communication appears to have passed between them, and no proceedings were commenced against the defendants for somewhat over a year. To require him to produce the letter, and to testify as to his own reply to it, was apparently in direct violation of the rule that professional communications between attorney and client are so far privileged that the attorney, when called as a witness, shall not be either compelled or permitted to disclose them. The defendants do not in our judgment relieve the case of this difficulty by the suggestion that there was some fraud or collusion between Brant & Company and the plaintiff, to which the attorney was privy, or in relation to which he gave some advice. The nature of this alleged fraud is not indicated with much distinctness in the bill of exceptions. We are unable to see anything in the case, as re-

ported, that has any appearance of fraud or collusion, except possibly some ground to suspect that the plaintiff may be but a nominal party, and that the suit is really prosecuted for the benefit of Brant and Peck. There is, however, nothing in the case to show that the sale of intoxicating liquors is prohibited by the laws of Wisconsin, where the contract was made, or that the contract was illegal under our own statutes, or that any advantage, dishonest or otherwise, could be gained by bringing the suit in the name of Higbee. A mere suggestion of fraud, in general terms, does not furnish sufficient ground for setting aside so well known and salutary a rule as that which protects and privileges the communications of counsel and client. If the case disclosed anything having a tendency to show that the witness was acting for himself as a party to the transaction, or that he was consulted in aid of any intended fraud, or that his advice was asked for any dishonest purpose, the matter would have raised a more serious question. It was to all appearance the ordinary case of information obtained by the witness, in his professional capacity as an attorney, in the ordinary course of business as such. We see nothing, in any of the facts reported, to take the case out of the well known rule. It was a mistake in the trial, therefore, to compel him to testify, and the evidence so obtained was incompetent and inadmissible. 1 Taylor on Evidence, §§ 833 *& seq*.

The two letters from the plaintiff to the same witness do not necessarily fall within the rule referred to, and are not of a specially confidential character. In the first of them he does little more than inquire whether certain earlier letters have been received; and in the second he simply requests him to deliver the note declared on to another attorney. The error in the other part of the case, however, renders it necessary to sustain the plaintiff's exceptions. *Exceptions sustained.*