## Chauncey Bacon, Respondent, *v.* Henry T. Frisbie, Impleaded, etc., Appellant.

Every communication which a client makes to his legal adviser for the purpose of professional aid or advice is protected.

Although an attorney, when called as a witness as to communications made to him, disclaims that he was acting in a professional capacity, that is a matter for the court to determine from the facts appearing.

It is not essential to bring the case within the statutory prohibition that a fee was paid at the time of the communication, or that a suit was pending or contemplated; if the communication was in the course of any professional employment, related to the subject-matter thereof, and may be supposed to have been drawn out in consequence of the relation of the parties to each other, it is entitled to protection as a privileged communication.

The rule of exclusion applies to every attempt to give the communication in evidence without the assent of the person making it; and so, includes a case where the evidence is sought to be given without such consent against a third person.

*It seems,* that when such a communication is sought to be proved in an action, to which the person making it is not a party, an objection thereto, by the party against whom it is offered, will lie, on the ground of public policy.

In an action to recover damages for an alleged conspiracy to defraud, one K. was called as a witness and allowed to testify, under objection and exception, to communications made to him by defendant R. Prior to the reception of the evidence it appeared that K. was an attorney, was at the time engaged in the practice of law, and was also carrying on a wholesale liquor store; he had done a good deal of law business for R., and gave him legal advice before and after said communications, and then gave his opinion as a lawyer upon the case presented. The communications were made to K. in his store; no fee was paid, there was no general retainer, and no suit was then pending. K. testified that he did not consider that R. was advising with him as counsel at the time. *Held,* that the evidence as to the communications was improperly received.

The General Term reversed the judgment as to R., but affirmed it as to defendant F. *Held,* error; that said testimony was incompetent as against F., and that the judgment should have been reversed as to both defendants.

*Bacon* v. *Frisbie* (15 Hun, 26), reversed, so far as it affirms judgment below.

(Argued March 5, 1880; decided March 19, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming, as to defendant Frisbie, and reversing as to defendant Ratnour, a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 15 Hun, 26.)

This was an action to recover damages for an alleged conspiracy to defraud.

The complaint alleged in substance, that in pursuance of an alleged fraudulent conspiracy to obtain from plaintiff certain hotel property by means of false representations, defendants induced plaintiff to sell and convey said property to defendant Frisbie, and to receive as security for the payment of a portion of the purchase-price a second mortgage upon a farm owned by Frisbie. Among other alleged false representations plaintiff alleged and gave evidence on the trial tending to prove that defendants represented that the amount unpaid upon the prior mortgage was but $5,000, when in fact it was $6,000. Plaintiff called as a witness one Kennedy, and offered to prove by him certain communications made to him by defendant Ratnour; this was objected to on the ground that they were professional communications. The witness testified in substance that he was an attorney at law, and before and since the time of the conversation had been consulted by and had done a good deal of business for Ratnour professionally. He also kept a liquor store, and the conversation was in that store. He had no general retainer from Ratnour, received no fee at this time, and he never was engaged by him in regard to this suit. He did not consider that Ratnour was advising with him as counsel, for the reason that Ratnour did not inform him what the transaction was until just as he was going out of the door. There were three or four others present at the time, and one of them was within hearing. The objection was thereupon overruled, and defendant's counsel duly excepted. The substance of the conversation, as given by the witness, was as follows : " Ratnour said to him : ' Suppose two men were trading land, and there was a fraud in the transaction, and a third party was

interested ; would he be liable ? ' Kennedy said he would. Kennedy asked what the fraud was. Ratnour said : 'Suppose a man should induce another to take a mortgage on a farm, and should tell him there was a $5,000 mortgage on it ahead of his, and it should turn out to be a $6,000 mortgage ; would he be liable ? ' Then he wanted to know if a third party made the representations, 'would the third party be liable ? ' Kennedy told him he would. After a little more talk Kennedy said, ' Was it this Bacon trade over here ? ' and Ratnour said, ' I guess it is.' Kennedy said, ' Where is the farm ? ' and ·Ratnour said, ' You know where it is.' Kennedy replied that he remembered now, because he, Ratnour, wanted him to take an inventory of the hotel property." ·

Further facts appear in the opinion.

*Edwin J. Brown*, for appellant. Communications between attorney and client in reference to all matters which are the proper subject of professional employment are privileged. (*Yates et al.* v. *Olmstead*, 56 N. Y., 632, citing *Britton* v. *Loreny*, 45 id., 51; *Whiting* v. *Barney*, 30 id., 330; *Corventry* v. *Tannahill*, 1 Hill, 33; *Bank of Utica* v. *Merserau*, 3 Barb. Chy., 533.) The mere fact that the counsel himself only regarded the communication as a merely casual conversation is of no account. (*Moore* v. *Bray*, 10 Penn., 519; 1 Best on Evidence [American notes by H. G. Wood], 329, note ; *Corventry* v. *Tannahill*, 1 Hill, 33; *Bank of Utica* v. *Merserau*, 3 Barb. Chy., 533.) The privilege is the privilege of the client, and the attorney cannot testify, even if he is willing to do so, without the consent of his client. (*Wilson* v. *Rustall*, 4 T. R., 759; 1 Phillips on Evidence, 163; Buller's *nisi prius*, 284; *Cherac* v. *Reinecher*, 11 Wheat. [U. S.], 280; *Rhodes* v. *Selvin*, 4 Wash. [U. S.], 718; *Jenkinson* v. *State*, 5 Blackf. [Ind.], 465; *Murry* v. *Dowling*, 1 Cranch's C. C. [U. S.], 157; *People* v. *Atkinson*, 40 Cal., 284; 1 Best on Evidence [American notes by H. G. Wood], 328, 329, notes.) The statements by Ratnour to Kennedy, made with the object and purpose of obtaining professional

advice, etc., were privileged. (*Marsh* v. *Home*, 36 Barb.,
649; *Flack's Adm.* v. *Nill*, 26 Tex., 273; *Johnson* v. *Sulli-
van*, 25 Mo., 574; *Alderman* v. *People*, 4 Mich., 414;
1 Greenfield on Evidence, § 240; *Crosby* v. *Crosby*, 2 Chy.
Sent., 15 [A. V. Chan. Ct., 1845]; *March* v. *Ludlam*,
3 Sandf. Chy., 35; *Brand* v. *Brand*, 39 How., 194; *Bank
of Utica* v. *Merserau*, 3 Barb. Chy., 533; 1 Phillips on
Evidence, 163.)

*James B. Jenkins*, for respondent. The relation of attor-
ney and client did not exist between Kennedy and Ratnour.
(1 Burrell's Law Dic., 114; Webster's Unabridged Dic-
tionary; Burrell's Law Dic., 291; 1 Greenl. Ev., §§ 239,
244.) It is indispensible to the existence of a privileged
communication that the relation of counsel as attorney and
client exist, and that the communication be made in faith
of that relation. (1 Greenl. Ev., §§ 239, 240.) It has no
reference to professional employment. (1 Phil. Ev., 145;
2 Stark. Ev., 230, 231; 1 Greenl. Ev., § 244; *Marsh* v.
*Howe*, 36 Barb., 649.) An attorney not acting profes-
sionally, but as a friend, may testify. (*Hoffman* v. *Smith*,
1 Caine, 159.) The privilege does not extend to facts
not confidentially communicated by the client. (*Chiras* v.
*Reinicker*, 11 Wheat., 280, 294; *Rhoades* v. *Selin*, 4 Wash.
C. Ct., 715; *Bank of Columbus* v. *French*, 1 Cranch C.
Ct., 221.)

FOLGER, J. The principal question in this case is whether
the testimony of Mr. Kennedy was properly received. He
was called as a witness for the plaintiff, and was permitted
to testify to a conversation had between himself and Ratnour,
one of the defendants. The matter spoken of by Ratnour
in this conversation was material to the issue on trial. True,
it began by Ratnour supposing a case, and asking, if such
a case existed, would there be a liability; but the hypothesis
put was significant; it was that of two men trading land,
and there was fraud in the transaction, and a third man

was interested ; and the query made was, would the third man be liable ? This supposition was brought nearer to being of the matter then on trial, when Mr. Kennedy asked Ratnour what the fraud was, and was answered : " Suppose a man should induce another to take a mortgage on a farm, and tell him there was a $5,000 mortgage on it ahead of his, and it should turn out to be a $6,000 mortgage, would it be fraud ? " It will be observed that though Ratnour supposed a case, Mr. Kennedy understood and treated it as a case in fact, for he asked him, as of a real transaction, what the fraud was ? And Ratnour answered, without denying that it was an existent case. Ratnour then went on with his hypothetical inquiry, to ask if a third party made representations as to what the mortgage was, would he be liable ? This question of Kennedy and answer of Ratnour brought the matter out of hypothesis and into reality. And when Kennedy then asked, " why, was it this Bacon trade " ? and Ratnour said that he guessed it was, there was hardly room for doubt as to the existence of facts like the suppositions he had framed for Kennedy ; and scarcely could a hearer of the testimony. keep from connecting the case stated by Ratnour with the case on trial. The testimony was material, and the inference was strong that Bacon and Frisbie were two of the parties, and Ratnour the third ; and that Ratnour had an uneasy feeling that there had that taken place which might be held by the law to be fraud. Nor can there be any question but that Ratnour made the communication to Kennedy so as to obtain from him the answer of one having legal knowledge. Every communication which a client makes to his legal adviser, for the purpose of professional aid or advice upon the subject of his rights and liabilities, is protected. Ratnour plainly wanted the opinion of a lawyer, of the legal effect of facts that he thinly veiled under a supposition. He sought aid to a legal conclusion from one whom he thought by his profession able to give it ; for Kennedy was a lawyer, and though he had gone into an incongruous occupation, was still engaged

in the practice of the law. The communications of Ratnour to him, were such as a client makes to his counsel, when disclosing to him a case on which to obtain a legal opinion.

Nor is there room for serious doubt that the relation of counsel and client existed between them at the time the communications were made. Kennedy was doing law business then ; he had done a great deal of it for Ratnour, having been employed in a number of cases ; had given him advice before and since ; and he gave his opinion as a lawyer upon the case then laid before him. For the time being he was Ratnour's legal adviser. Though he disclaimed on the trial that he acted in a professional capacity, that was a matter for the court to determine from the facts appearing. Ratnour, it is manifest, went to Kennedy and spoke to him of the matter, upon the faith that he was a lawyer and of the relations between them of counsel and client. It matters not that he paid no immediate fee ; nor that suit was not then pending or then contemplated. Communications made to an attorney in the course of any personal employment, relating to the subject thereof, and which may be supposed to be drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence, and entitled to protection as privileged communications : (*Williams* v. *Fitch,* 18 N. Y., 551.) All communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether they relate to a suit pending or contemplated, or to any other matter proper for such advice or aid : (*Britton* v. *Lorenz,* 45 N. Y., 51.) And whenever the communication made, relates to a matter so connected with the employment as attorney or counsel as to afford presumption that it was the ground of the address by the client, then it is privileged from disclosure : (*Turquand* v. *Knight,* 2 M. & W., 98.)

The learned General Term was, therefore, right in holding that the testimony was improperly received, so far as Ratnour was concerned. It is claimed that it did not go far enough

in its order of reversal, and upon the point made here it is
for this court now to say if it would be improperly received
though limited to affecting Frisbie; and we think that it
would. The principle upon which these communications are
protected from disclosure applies to every attempt to give
them in evidence, without the assent thereto of the person
making them. That principle is, that he who seeks aid or
advice from a lawyer ought to be altogether free from the
dread that his secrets will be uncovered; to the end that he
may speak freely and fully all that is in his mind. Now
this principle is not wholly kept, if what is thus said may be
told without his assent, though to the immediate harm or
help of another only. The disclosure is made, his secret is
bruited, and he has it no longer in his power to stay it from
use by any in strife with him, just as much when given in
testimony against another as against him. It is not, indeed,
put in evidence directly against him to his immediate harm,
but that thing, the knowledge of which was confined to him
and his adviser, has become matter of common knowledge,
and may be the cause of his harm. The effect may not be
so direct and immediate, yet it is a possible effect, and the
foreseen possibility would press upon his lips, when in con-
sultation with his legal adviser, nearly as heavily as if testi-
mony of what he showed to his counsel could be called out
in evidence against himself. A branch of the rule, to wit:
that the communication is to be inviolate, though no suit be
begun or contemplated, shows that though there is no present
opportunity of the use of evidence of it against him, the
communication is made under the seal of professional confi-
dence. And it is but a further natural growth of the rule,
that the communication is to be privileged from being put in
evidence for or against another, lest it, by means of the
knowledge of it thus given, be used to his harm for the sus-
taining or defense of a suit thereafter begun in which he
may be made a party. Hence, when Ratnour objected to
the testimony of Kennedy, he made a good objection to the
receipt of it at all, whether it was or was not limited in its

effect to the case of Frisbie. And had Ratnour not been a party to the action, and so have no right to be at the trial and object, yet the objection would lie in the mouth of Frisbie, who, by it, would but call upon the court to keep untouched a rule of public policy, made and to be kept not especially for his good, but for that of all men. The rule is in the nature of that which excludes evidence when the production of it would be prejudicial to the public interests. The public good in the concealment of it overbalances that which may be reached, either by the public in the administration of criminal law, or by private persons in the inquiry into their rights.

The testimony of Kennedy was not competent to be given at the trial. The vice in the reception of it was in the nature of it, and not that it was aimed at this or that person as a party to the action on trial. (See *Rex* v. *Withers*, 2 Camp., 578; *Wilson* v. *Rastall*, 4 T. R., 753, per Buller, J., 760; *Chant* v. *Browne*, 12 Eng. Law and Equity, 299.)

It is said that it was offered against Ratnour alone, and not to affect Frisbie. It does not appear from the case that it was limited when called out, or even after, during the trial; and it is not easy to perceive how it could be taken, as it was generally, without having weight in the mind of the jury against each of the defendants, they being sued as joint actors in a fraud upon the plaintiff.

True, the communications must be to the professional adviser for his information; and it may be that if a client chooses to speak his mind to his counsel, in the presence and hearing of persons unrelated to him in the matter, that what is said is not privileged. We have not to decide that, at this time. It is claimed here that what was said by Ratnour to Kennedy was in the presence of others. In answer to the preliminary questions put to Kennedy he said that others were present, and he inferred that one of them could have heard the communication; but it is not shown that any other person than Ratnour and Kennedy heard this particular conversation; nor did the trial court put its ruling upon that

ground. The testimony was admitted, for that Kennedy said, that he was not counsel. We are not able to say that the fact existed that Ratnour made his statement so that others than Kennedy heard it.

We are therefore of the opinion that the General Term should have reversed the judgment *in toto* and ordered a new trial for both defendants.

The other exceptions made at the trial, and brought before us by the points of the appellant, do not show error.

The judgment of the General Term, so far as it affirms the judgment against the defendant Frisbie, should be reversed, and a new trial ordered for him as well as the defendant Ratnour.

All concur.

Judgment accordingly.