## In re MELLEN.

(*Supreme Court, General Term, First Department.* March 31, 1892.)

1. REMOVAL OF ASSIGNEE—GROUNDS—EVIDENCE.

   An assignee who seeks to further the interests of the assignor to the prejudice of creditors, retains counsel employed by the wife of the assignor having claims on the assigned estate hostile to those of creditors, is guilty of prevarications in the interests of the wife of the assignor, and makes no examination of the books of the assignor after notice from creditors that the assignor had not included certain assets in his inventory, should be removed.

2. SAME—REFERENCE OF APPLICATION.

   On an application for the removal of an assignee the court may refer the matter to a referee to take proof thereon, and report, with his opinion, for the purpose of aiding the conscience of the court.

3. REMOVAL OF REFEREE—PREJUDICE.

   The fact that a referee charges an attorney for one of the parties with purposely delaying and obstructing proceedings before himself, the charge being true, is insufficient to justify the removal of a referee on the ground of prejudice.

4. ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS.

   An attorney cannot raise the objection that certain communications to him were privileged, where the person making them has disclaimed the existence of the relation of attorney and client between himself and the witness.

5. SAME—CONSTRUCTION OF STATUTE.

   Communications from third persons, to whom an attorney has been referred by his client, are not privileged, under Code Civil Proc. § 835, which provides that "an attorney or counselor at law shall not be allowed to disclose a communication made by his client to him," etc.

Appeal from special term, New York county.

Application for the removal of an assignee. From an order of removal, from an order referring the application to a referee, from an order denying a

motion to remove a referee, and from an order requiring a witness to attend and testify, the assignee appeals. The referee was sought to be removed on the ground that he had displayed prejudice in charging an attorney for one of the parties with attempting to delay the reference. Affirmed.

For report of other litigation involving this estate, see 9 N. Y. Supp. 929; 14 N. Y. Supp. 665; 16 N. Y. Supp. 191, 887; 17 N. Y. Supp. 866.

Argued before VAN BRUNT, P. J., and O'BRIEN, J.

*Henry Daily, Jr.*, for appellant. *George Hill*, for respondents.

VAN BRUNT, P. J. It is impossible to consider in detail the lengthy record and argument of counsel upon the appeals from the various orders above mentioned. It will suffice in disposing of these appeals to deal with the merits of each in a general way, without attempting to particularize the various circumstances established by the record, and which have led to the conclusions arrived at. It seems to us that this record exemplifies to a striking degree the impropriety of the appointment of an assignee for the benefit of creditors. who is a nonresident of this state. Although it is claimed the assignee in question appointed an attorney to appear for him in all proceedings which might be brought against him, it is apparent from the facts appearing upon this record that service of papers upon the assignee was impeded by such non-residence, and he was enabled to delay his appearance because thereof. Although this, of itself, would probably not have been sufficient to justify the removal of the assignee, there are other facts disclosed which show that no other conclusion could have been arrived at, not only in justice to the parties represented by the assignment in the case at bar, but also without setting a precedent which might be in other cases productive of the greatest mischief. It is apparent that the assignee sought by every means within his power to further the interests of the assignor and his wife in the claims which were presented against the assigned estate; that he aided them in the procuring of testimony, and even went so far in his advocacy of their claims as to employ their attorney as his counsel in the administration of the assigned estate. An assignee should certainly be unbiased as between the various parties interested in the assigned estate; and it is the grossest misconduct for an assignee to employ the known counsel of a person holding property alleged by other parties interested in the estate to belong to such estate, and who has been retained to defend that possession. The result of the retainer of such counsel has been a studied attempt to throw every impediment in the way of those seeking information in regard to this estate, even to the most outrageous prevarication; in one instance the counsel stating, when called upon to produce certain books, that he had none in his possession, that none such had come into the possession of the assignee, and none into the possession of the attorney, and that, if they had come into the possession of the assignee, they had not been sent to the attorney, when the fact subsequently appeared that, during all this time the attorney had the possession of these books, and had willfully suppressed the fact, making a false statement before the referee, in order that the evidence might be reserved for certain other litigations in which his real client, the wife of the assignor, was a party. It further appears that the assignee himself, in his eagerness to protect the wife of the assignor in the possession of the property which she had received from him, did not hesitate also to swear to what it is evident he knew to be untrue. Certain charges were made in the moving papers against the assignee in respect to deeds of property made by the assignor for the benefit of his wife, and claims were made against the assignee because of his failure to act in reference to those deeds, and the charge was made that, before the making of the general assignment, he had knowledge of said deeds, and of the commencement of the partition suit, and of the claims of the petitioners herein. In answer thereto the assignee swore that he had no knowledge of such deeds, either be-

fore or at the time said general assignment was made, and not until months afterwards. The assignment was made on the 24th of April, 1889, and it appears that on the 8th and 20th of April, 1889, the assignee had written to A. C. Ellis, the then attorney for the assignor and his wife, letters in which he shows his solicitude that the assignor's wife should be able to maintain the integrity of the very conveyances which in his answering affidavit, above referred to, he had denied having any knowledge of. The petition also contained statements that the then attorney for the assignor and his wife had consultations with the assignee in regard to the making of the conveyances, etc., and the assignee, in his answer, stated that he had not seen and conversed with said assignor and his wife for at least seven months before said deeds are alleged by the petitioners to have been made,—the date of the deeds being the 5th of November, 1888,—whereas, it was established upon this hearing that in October, 1888, he had seen and talked with the assignor, and even admitted the same upon his examination. It further appears that the assignee made no examinations of the books of the estate for the purpose of ascertaining its condition, nor for the purpose of learning whether there were assets other than those contained in the inventory filed by the assignor, and notwithstanding the fact that the assignee had notice soon after his appointment that the petitioners claimed that the assignor had assets not included in his inventory, the fact being that subsequent to the 24th of May, 1889, the assignee committed the whole business of the assigned estate to the attorney for the assignor and his wife, and used his position entirely for their benefit. And there are other circumstances which go to show that the assignee was more solicitous for the protection of the claim of the wife of the assignor upon the property which she had acquired from the assignor than he was to protect the interests of the creditors upon the assignor's estate. But it is needless to go more at length into the voluminous testimony offered, because what has already been adverted to seems to be much more than sufficient to justify, but also to require, the removal of such an assignee. It is urged that the referee was guilty of error in admitting certain testimony, namely, that of Mr. Ellis and of Mr. Mellen, who was then deceased. Although the evidence given by Mellen in the partition suit may not have been strictly competent as against the assignee, he not being a party to that action, yet it is not of such a character as in any way to affect the conclusion arrived at upon other facts incontestably established. As to the objections to the evidence of Mr. Ellis, they will be considered in the discussion of the appeal from the order which was made requiring him to testify. The order removing the assignee should be affirmed, with $10 costs and disbursements, to be charged against the assignee personally.

The next order appealed from is that referring it to a referee to take proof of the facts stated in the petition for the removal of the assignee, and the answer thereto, the referee being required to report, with his opinion thereon. We are not aware upon what ground this appeal is based. The court undoubtedly had the power to refer any questions to the referee to take proof thereon, and report, with his opinion, for the purpose of aiding the conscience of the court; not that such report is binding upon the court, but it simply presents the evidence, with the opinion of the referee as to its weight, he having had the benefit of hearing the witnesses orally testify. This order should also be affirmed, with $10 costs and disbursements, to be paid by the assignee personally.

There seems to be no basis whatever for the appeal from the order denying the motion to remove the referee. The attorney for the assignee had been guilty of the greatest procrastination, and had evidently been endeavoring by every means in his power to delay the proceedings in the reference; and that the patience of the referee had not long before been exhausted is the only matter for surprise presented by the record. That a court or referee is presuma-

bly prejudiced because it correctly characterizes the proceedings of the attorney before him has not yet obtained in legal jurisprudence. But this seems to be the only ground upon which the motion to remove the referee was made, and upon which this appeal is based. The referee doubted—and subsequent events proved correctly doubted—the good faith of the conduct of the attorney; and that he should be required to appear to be so much without sense as to be seemingly imposed upon by the transparent tactics of the attorney seems to be the claim made upon the part of the appellant. We are not aware of any such rule, and we see nothing, upon the admitted state of facts in reference to the proceedings before him, which calls for criticism, except, perhaps, too much long suffering. This order should also be affirmed, with $10 costs and disbursements, to be paid by the assignee personally.

The next appeal is from the order requiring the witness Ellis to testify. It appeared that he had been required to attend before the referee, and to produce certain papers which he had received from the assignee. The witness claimed that he had been the attorney for the assignee, and that, as such, the communications between himself and his client were privileged. Upon the reference, attention being called to the affidavit made by the assignee in answer to the allegations contained in the petition upon the motion for his removal, in which the assignee stated that he had never employed Ellis as his attorney or counsel, or authorized him to act for him in any capacity, or with respect to any business of any kind, the referee directed the witness to answer. He still refusing, and the referee holding that he had no power to compel him to answer, a motion was made before the court to compel the witness to answer. This motion was granted. It is claimed upon the part of the appellant that it was error to refuse to the assignee or his attorney an opportunity to be heard in opposition upon the objections which had been made by the attorney for the assignee, and upon which objections Ellis had refused to answer the questions. It might be sufficient to say that there is nothing in the record tending to show that the judge before whom the motion was made refused to allow the attorney to be heard. On the contrary, it does not appear that any such request was made, but it does appear that the attorney for the assignee appeared and objected to the motion being heard, upon the ground that the assignee had received no notice thereof. The proceeding before the court was simply to enforce the ruling of the referee, and the assignee had his exception to the ruling, and it was available to him; the only point being whether the ruling was so manifestly erroneous that the court should refrain from disciplining the witness for contempt of court. It is perfectly plain that the referee was entirely right in the ruling which he made. It is true that the witness claimed to have been the counsel of the assignee at the time of the writing of the letters which he was required to produce. But the assignee had in the most solemn manner, under oath, and unqualifiedly and without reservation, denied that he had ever occupied that relation towards him, either individually or as assignee, or in any capacity whatever, or in respect to any business. In the face of this disclaimer under oath there was no interest whatever of the assignee which the court was bound to protect. There were no secrets of attorney and client which, under the provisions of law, should not be divulged. The client must know as to whether or not he made the communications in view of that relation, and, if they were not made in view of that relation, then the communications were not made by the assignee to Mr. Ellis in the course of Mr. Ellis' professional employment by the assignee. But it is sought to show that it was erroneous to allow Ellis to be examined, because he had been the attorney for the assignor and his wife, and that these letters by the assignee were written to him while he occupied that relation; and we are referred to one English authority and one authority in a United States court to sustain this proposition. It is undoubtedly held in those cases that the privilege of the attorney extends to information received

on behalf of the client in regard to his affairs from persons to whom the at-
torney has been referred by the client for the purpose of his obtaining such
information as his counsel. But the question is not to be controlled by the
decisions of English courts nor those of the United States. The authority of
the Code, under which this exemption must be claimed and established, if at
all, is explicit. It is as follows: "An attorney or counselor at law shall not
be allowed to disclose a communication made by his client to him, or his ad-
vice given thereon in the course of his professional employment." It will
thus be seen that the exemption embraces only communications between the
client and his attorney, and does not extend to communications from third
persons to the attorney; and judicial construction has never enlarged the
rule (certainly in this state) to the extent claimed by the appellant. In regard
to the proof of the letters, they were amply established. They were shown to
have been received under circumstances which carried the proof of their
authenticity with them; and, although the assignee was examined on his own
behalf, he had not the hardihood to deny his own handwriting. The cases
of *Bacon* v. *Frisbie,* 80 N. Y. 394, and *Britton* v. *Lorenz,* 45 N. Y. 51–57,
in no way conflict with this view. In those cases it was held that the rela-
tion of attorney and client existed, and in the case first cited the court held
that it was manifest that the party went to the attorney and spoke to him of
the matter upon the faith that he was his lawyer, and of the relation existing
between them as counsel and client. In the case at bar the assignee has dis-
claimed in the most solemn manner that any relation of that kind had ever
existed in respect to any business between himself and Mr. Ellis. There is
no reason, therefore, for disturbing this order, and the same should be
affirmed, with $10 costs and disbursements, to be paid by the assignee per-
sonally.

The judgment therefore is that the four orders appealed from be affirmed,
with $10 costs and disbursements in each case, to be paid by the assignee
personally.