ALBERT C. WADE, Administrator, *vs.* HENRY RIDLEY.

Somerset. Opinion April 4, 1895.

*Client and Attorney. Evidence.*

Statements of fact made in good faith to an attorney at law for the purpose of obtaining his professional guidance or opinion are privileged communications. It is not necessary that the relation of attorney and client should exist.

This rule should be construed liberally in favor of the person seeking legal advice in order to encourage a full statement of all the facts.

Upon an issue as to the ownership of certain live stock and farm movables, it was a material question whether the defendant, who once owned them, had not permitted them to go into the control of the plaintiff's intestate. The plaintiff, in order to prove such fact, called an attorney to whom the defendant had applied for advice as to his rights and to whom he had communicated the disposition made of the property. *Held;* that the admissions thus made to the attorney were privileged.

ON EXCEPTIONS.

This was an action of replevin for certain live stock and farming utensils alleged to belong to the estate of Horace D. Ridley, the plaintiff's intestate.

The plaintiff claimed, and introduced testimony tending to show, that in 1884 the defendant conveyed to said Horace D. Ridley his farm in Athens, and that the said Horace D. Ridley mortgaged back the same farm on the same day, the condition of the mortgage being that the said Horace D. Ridley should support the said Henry Ridley and his wife during their lifetime; and that as a part of the same trade, Henry Ridley sold all his personal property to the said Horace D. Ridley.

The defendant claimed, and offered testimony tending to show, that the said personal property was not sold to the said Horace D. Ridley, but that the said Horace, by agreement, took the said property, and agreed to keep up the stock to its value at the time of said trade and to pay taxes on it for the use of it, the title in said personal property and in the various substitutions of it to remain in the said Henry Ridley; and that part of the property replevied was either the same property referred to in their trade in 1884, or substitutions which had been made by the said Horace Ridley in accordance with their trade.

An attorney at law, called for the plaintiff, testified that he made the writings between Henry and Horace Ridley; that after making the deed and mortgage, he got ready to make the writings about the personal property and a discussion ensued between the two as to the changes that would have to be made, and how the writings should be made that would cover and hold when all these changes had been made; and that it was agreed that the personal property should go to Horace, and that there should be no claim given back upon it; that there should be given to Henry Ridley a two hundred dollar note; which was done; that no bill of sale of the personal property was made; that it was the expectations of the parties, as stated when they went to his office, that Henry should in some way retain a claim on the stock.

The attorney then testified as follows :—

"Q.   (By plaintiff's attorney.)   I want to inquire of you if you had an interview with Henry Ridley at some time within two or three years in relation to this same property — this two hundred dollar note and the personal property?

"A.   Yes, sir, I think about two years ago, Henry Ridley came to me and showed me the note and asked me—"

Mr. Savage, for defendant : "I suppose that communications which Henry Ridley made to Mr. Holman are not admissible.

"Court.   You made the note?

"A.   Yes.

"Court.   It was delivered at that time?

"A.   It was."

Against the objection of the defendant, the attorney was permitted to testify further as follows :

"Q.   State what was said between you and Mr. Ridley.

"A.   I think it was two years ago [1891] this last summer that he came to me and showed me the note and asked me about collecting it.   I told him it was then barred by the statute of limitations so it could not be collected.   He then asked me if he could not hold some of the stock, I said to him : 'You know what the trade was?'   He said : 'Yes, but I have never delivered the stock over to Horace.'   Then I asked him if it had not passed into Horace's hands so there wasn't any of the original stock left, and I think he was able to name one or two animals that had not passed over into Horace's hands.   I think that was the substance of the conversation that I remember."

The defendant was not permitted to testify, in contradiction to the attorney.   The court found the title to the property to be in the plaintiff. as administrator of said Horace D. Ridley, and ordered judgment accordingly.

To the ruling of the presiding justice permitting the attorney to testify to the conversation between him and Henry Ridley in 1891, and communications made to him at that time by Henry Ridley, the defendant was allowed his exceptions.

*D. D. Stewart*, for plaintiff.

In a late case the Supreme Court of Missouri say : " The relations of attorney and client do not exist so as to render communications or statements privileged, until a proposal has been made to engage the services of the attorney, and the latter's acceptance of the employment." *Hickman* v. *Green*, 22 S. W. Rep. 455 ; S. C. 7 General Digest, 933-4, § 2250. No such proposal or acceptance, is shown in the case at bar.

Testimony of an attorney is not to be excluded unless it extends to material information derived at the time from the client as such. *Crosby* v. *Berger*, 11 Paige, 378 ; *Arbuckle* v. *Templeton*, 65 Vt. 209 ; *Hoy* v. *Morris*, 13 Gray, 520 ; *Patten* v. *Moor*, 29 N. H. 168 ; *Day* v. *Moor*, 13 Gray, 522-523. ·

This evidence added nothing new to the plaintiff's side, and whether in, or out, would not affect the result. If it had any effect it was to help the defense by showing no delivery intended as such to Horace. *Bales* v. *Horner*, 65 Vt. 471.

The interview with the attorney gives no idea that it was the purpose of Ridley to employ him in any legal capacity. It was about seven years after the transaction took place, and knowing that he was aware of what took place at that time, and that he wrote the two hundred dollar note, he asks certain questions for his own information, without, so far as the case discloses, any purpose of retaining the witness as counsel. It was a casual conversation, apparently, which might have occurred in the street, or post office, or town meeting, and related to a previous transaction of years before, about which each party knew.

*A. R Savage and H. W. Oakes*, for defendant.

The defendant went to his attorney to consult him in a professional capacity. " He showed me the note, and asked me about collecting it." He then asked him about his rights in the stock, still seeking legal information from a lawyer.

As the witness put it, the original trade was that the property should go to Horace. The defendant before this had introduced testimony to the contrary. So that was the issue in the case.

The inference to be drawn from the witness' testimony then is that, in the conversation which is objected to, the defendant admitted that the witness' version was correct, but sought to

avoid the force of it by claiming a non-delivery. Then the witness testified that they had a further conversation, the substance of which was that all the stock had been delivered over into Horace's hands except one or two animals.

All communications made by a client to his counsel for the purpose of obtaining professional advice or assistance are privileged. *Higbee* v. *Dresser*, 103 Mass. 523 ; *Bacon* v. *Frisbie*, 80 N. Y. 394 ; *Sleeper* v. *Abbott*, 60 N. H. 162 ; *Maxham* v. *Place*, 46 Vt. 434 ; *Snow* v. *Gould*, 74 Maine, 540.

They are entitled to protection whether they relate to a suit pending or contemplated, or to any other matter. The communication need not relate to litigation. *McLellan* v. *Longfellow*, 32 Maine, 494 ; *Sargent* v. *Hampden*, 38 Maine, 581 ; *Root* v. *Wright*, 84 N. Y. 72.

The attorney was permitted to testify to matters which happened afterwards, and to disclose what he claims the defendant said to him about whether the trade, made between the father and the son in the first place, had been carried into execution.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WISWELL, JJ.

EMERY, J.   When are statements of facts made to an attorney at law privileged communications, and when are they not privileged?   On the one hand, if made to the attorney as an individual merely, and not to him in his professional capacity, they are not privileged.   Neither are they privileged if made to him in his professional capacity, in giving him directions to do some particular thing.   *Hatton* v. *Robinson*, 14 Pick. 416.   On the other hand, it is not essential that the relation of attorney and client exist, for the statements may be privileged when the attorney refuses to accept any employment or give any advice. *Sargent* v. *Hampden*, 38 Maine, 581.

The test or rule deducible from the authorities seems to be this : If the statements of fact were made to an attorney at law in good faith, for the purpose of obtaining his professional

guidance or opinion, they are privileged; otherwise they are not privileged. *McLellan* v. *Longfellow*, 32 Maine, 494; *Higbee* v. *Dresser*, 103 Mass. 523; *Britton* v. *Lorenz*, 45 N. Y. 57; *Bacon* v. *Frisbie*, 80 N. Y. 394; *Crisler* v. *Garland*, 11 Smed. & M. (49 Am. Dec. 49); *Beltzhoover* v. *Blackstock*, 3 Watts, 20 (27 Am. Dec. 330).

An order of men, honorable, enlightened, learned in the law and skilled in legal procedure, is essential to the beneficent administration of justice. The aid of such men is now practically indispensable to the orderly, accurate and equitable determination and adjustment of legal rights and duties. While the right of every person to conduct his own litigation should be scrupulously respected, he should not be discouraged, but rather encouraged, in early seeking the assistance or advice of a good lawyer upon any question of legal right. In order that the lawyer may properly perform his important function, he should be fully informed of all facts possibly bearing upon the question. The person consulting a lawyer should be encouraged to communicate all such facts, without fear that his statements may be possibly used against him. For these reasons, the rule above stated should be construed liberally in favor of those seeking legal advice. It does not apply, of course, where it is sought to find a way to violate some law.

Measuring the statements made in this case by this rule thus liberally construed, they may come near the line, but we think they are fairly within the rule. The defendant was evidently desirous of obtaining the attorney's opinion as to his rights and the best mode of enforcing them. For that purpose, he told the attorney of some of his transactions with the plaintiff's intestate. It is these statements thus made, which his antagonist now seeks to use against him.

The plaintiff now insists, however, that the communications disclosed by the attorney were all immaterial to the issue being tried. The issue was as to the ownership of certain live stock and farm movables, which once belonged to the defendant. One material question was, whether he had permitted them, or any of them, to go into the control of the plaintiff's intestate.

He practically admitted to the attorney that most of the stock, at least, had so gone. As the case is presented to us, this admission seems material.

*Exceptions sustained.*