[No. 3357.   Decided December 14, 1899.]

GEORGE W. HARTNESS, *Appellant,* v. O. P. BROWN, *Respondent.*

EVIDENCE—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.

Information acquired by an attorney in the course of his professional employment, in which his advice has been sought by a client and a third party, concerning a transaction between them, cannot be divulged by the attorney in a suit in which such third party is interested, without the latter's consent.

SAME—RULE IN CASE OF FRAUD.

The rule that communications made to an attorney in contemplation of fraud are not privileged is inapplicable in the case of statements made to an attorney with reference to an executed transfer of real property, although the transfer may have been made in fraud of creditors.

(DUNBAR, J., dissents.)

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Reversed.

*George C. Israel* and *John R. Crites,* for appellant.
*Jere Neterer* and *O. P. Brown,* for respondent:

It is indispensable to the existence of a privileged communication that the relation of attorney and client exist, and that the communication be made on the faith of that relation. *Landsberger v. Gorham,* 5 Cal. 450; *Hunter v. Watson,* 12 Cal. 377 (73 Am. Dec. 543); *Hatton v. Robinson,* 14 Pick. 423 (25 Am. Dec. 415); *Romberg v. Hughes,* 26 N. W. 351; *Caldwell v. Davis,* 15 Pac. 701 (3 Am. St. Rep. 599); *Sharon v. Sharon,* 79 Cal. 677; *Clay v. Tyson,* 26 N. W. 240; *Desborough v. Rawlins,* 3 Mylne & C. 515.

Communications made to an attorney in the course of his employment by other persons than the clients are not privileged, nor are such communications privileged when made by the client to the attorney in the presence of others, nor by other persons to the attorney, in the presence of the client, nor information obtained by the attorney from other sources than from the client. *Randolph v. Quidnick Co.,* 23 Fed. 278; *Whiting v. Barney,* 30 N. Y. 330 (86 Am. Dec. 385); *Crosby v. Berger,* 11 Paige, 377 (42 Am. Dec. 117); *Rochester City Bank v. Suydam,* 5 How. Pr. 254; *Alderman v. People,* 4 Mich. 414 (69 Am. Dec. 321); *Coveney v. Tannahill,* 1 Hill, 33; *Hatton v. Robinson,* 14 Pick. 416 (25 Am. Dec. 415); *Oliver v. Pate,* 43 Ind. 140.

Appellant and Wiswell are charged with having conspired together for the purpose of committing a fraud upon the creditors of Wiswell, and that the conveyance was accepted by appellant for the sole purpose of assisting Wiswell in the consummation of such fraud. If such was the purpose of the disclosure, the same would not have

been privileged, even if made by Wiswell confidentially to his attorneys, and certainly not when made by Hartness. *Alexander v. United States,* 138 U. S. 353 (34 L. ed. 954); *Higbee r. Dresser,* 103 Mass. 523; *Woodruff v. Hurson,* 32 Barb. 557; *Taylor v. Evans,* 29 S. W. 172.

The opinion of the court was delivered by

REAVIS, J.—Action to quiet title. On the 1st of May, 1896, G. W. Wiswell conveyed to plaintiff (appellant) the property in controversy. The consideration recited in the deed was one dollar. The property conveyed consisted of two dwelling houses and a vacant lot in New Whatcom. At the time the deed was executed the grantor, Wiswell, was indebted to the Columbia National Bank of New Whatcom in the sum of $1,400, evidenced by a promissory note executed April 1, 1893, and bearing interest at the rate of one per cent. per month. The bank became insolvent in June, 1893, and at the time of the transfer was in the custody of a receiver. In 1896, after the deed was executed, the receiver of the bank brought an action upon the note against Wiswell, and in the same month obtained a judgment against him for $2,185. In September following the judgment was sold at public auction by the receiver as one of the assets of the bank, and the respondent (defendant) purchased the same for $350. The defendant thereafter, in November, 1897, caused an execution to issue upon the judgment, and a levy to be made upon the property in controversy, and sale thereof, and in February, 1898, received a sheriff's certificate of purchase. Thereafter appellant commenced the present action, alleging ownership in fee and possession of the real property in controversy, and that the defendant claimed an interest or estate therein, which was without right, and asked that the title be quieted. Respondent, answering the complaint, denied the ownership and possession of appellant,

and further set up an affirmative defense that the convey-
ance executed by Wiswell, the owner of said real estate,
to the appellant, was fraudulent and without considera-
tion, and made for the purpose of hindering, delaying, and
defrauding the creditors of Wiswell, and especially of the
bank before mentioned, and that appellant had full knowl-
edge of and participated in the attempted fraud upon the
creditors of Wiswell; and respondent prayed that his title
be adjudged superior to that of appellant. Appellant re-
plied, denying all the facts alleged in the affirmative de-
fense. Upon the issues thus made the case went to trial.
The original deed executed by Wiswell to appellant was
received in evidence, and a certified copy thereof from the
auditor's office was tendered by counsel for appellant, but
not admitted. Affirmative evidence of the consideration
of the deed, and good faith of the conveyance from Wis-
well to appellant, and possession thereunder, was given by
appellant. Respondent then introduced testimony tend-
ing to establish the affirmative defense of the answer. The
case was taken under advisement by the court until some
months thereafter, when the counsel for respondent moved
to re-open the cause for the purpose of introducing testi-
mony. The motion was granted, and thereupon two wit-
nesses, each an attorney and counselor at law, were ex-
amined by respondent's counsel touching declarations of
the appellant made to them relative to the execution of the
deed to the premises in controversy before the commence-
ment of this suit. Objection was made by counsel for ap-
pellant to the testimony of each of the witnesses, upon the
ground that the communications made to them by appel-
lant were privileged. The objections were overruled, and
the witnesses testified to declarations and statements made
by the appellant variant from the testimony given by
appellant at the trial of the present cause. The statements
made by the appellant were made at the office of the attor-

ney witnesses, Messrs. Newman & Howard, who were also law partners. The relation of attorney and client existed between Wiswell and Messrs Newman & Howard. Mr. Wiswell consulted them as to the effect of the conveyance from himself to the appellant, and also to resist the confirmation of the sale of the property in controversy.

Referring to the statements of plaintiff, Mr. Newman, one of the witnesses, testified as follows:

" Q. You say that he was there at your office, where this conversation that is referred to took place, as I understand you?

A. Yes, sir.

Q. In your law office in New Whatcom?

A. Yes, sir.

Q. Who was present at the time?

A. Mr. Hartness was there on three different occasions. My recollection is that on the first occasion that Mr. Wiswell, Mr. Hartness, my partner Mr. Howard, and I were present; on the second occasion Mr. Hartness and I were present; on the third occasion Mr. Hartness and I were present.

Q. Now he [appellant] came to your office to see you as an attorney, did he?

A. I think he did; yes.

Q. And whatever conversation he had with you now on those occasions was talking to you as an attorney, was he not?

A. Yes, I guess he knew I was an attorney?

Q. Well, he was talking to you to get your advice or opinion with reference to that which he was talking about?

A. I didn't so understand it.

Q. Well, did you give him advice upon the matter?

A. To Mr. Hartness?

Q. Yes.

A. No, I—well, I don't know whether I did or not, Mr. Crites. That would possibly be an opinion. I stated my opinion to him in regard to a certain matter.

Q. Now then that conversation, then, was in the nature of an inquiry of you as an attorney and you gave what your ideas were with reference to it, wasn't it?

A. No, Mr. Hartness made no inquiries of me. I will explain: I sent for Mr. Hartness, he did not voluntarily come to me, he came at my request. I wanted to ascertain certain information that I thought he possessed, and therefore I sent for him and he came and I asked him certain questions and he made certain statements to me.

Q. And what communication was made there was made in connection with that matter of your employment as attorney, was it not?

A. Of Mr. Wiswell, that is it exactly; yes, sir.

Q. And the only knowledge you have of the matter was received by you in a professional capacity as an attorney employed in that matter?

A. I think that is correct; yes.

Q. By the court: Had you conversation with Mr. Hartness at that time, in the presence with Mr. Wiswell, with reference to matters involved in the subject matter that Mr. Wiswell consulted you about?

A. Oh, yes.

Q. By the court: The information which you derived from Mr. Hartness was received from statements made by him in the presence of Mr. Wiswell, at that time?

A. Well, some of them. To explain: Mr. Wiswell made certain statements to me when I was acting as his counsel, and I requested that he send Mr. Hartness to me, and requested that Mr. Hartness bring a certain deed that I understood Mr. Wiswell had given to Mr. Hartness; and my recollection is that when Mr. Hartness came to my office to bring the deed in question he was accompanied by Mr. Wiswell. I examined the deed and asked Mr. Hartness, and at the same time Mr. Wiswell, numerous questions in regard to the matter. However, there were certain matters that did not occur to me at the time that upon subsequent consideration did occur to me, and thereafter I asked for Mr. Hartness to visit me again, and the second time he came without Mr. Wiswell, when I went over the matter with him more fully than originally.

Q. Well, you gave your opinion, did you not?

A. I did to Mr. Wiswell.

Q. Did you give it to Mr. Hartness?

A. I might have told Mr. Hartness at the time what my judgment was in regard to the validity of the transfer.

.      .      .      .      .

Q. You were inquiring into the fact as to whether it was a good transfer or fraudulent transfer, were you not? That was your point in the examination, wasn't it?

A. Well, I wanted to be able to advise Mr. Wiswell as to whether he had or had not a good legal title.

Q. As to whether he had conveyed a good title to Hartness—wasn't that it?

A. Yes, sir."

The witness also said he desired to regard the communications as confidential and privileged.

Mr. Howard, the partner of Mr. Newman, testified to the statements made by plaintiff in the presence of himself and Wiswell and his partner, in the consultation room. He said:

" They desired to know further relative to the transfer of property made by Wiswell to Hartness, plaintiff, and they asked to have the plaintiff come in so they could go over the matter with him, and the conversation occurred when he came in."

The witness also said:

" I desire to make a statement on my own behalf that while it is somewhat in the nature of a legal conclusion, possibly, for the court to pass upon, it occurs to me that that conversation had there was one of a privileged character. All the information that we received from Mr. Hartness, while we were not his attorneys, it was practically examining him as a witness for Wiswell. Judges may differ as to what that means."

Witness also said it was a general conversation between counsel and Wiswell and plaintiff with reference to the execution of the deed, and the transfer of the property in controversy here, and that the matter under consideration

at the time was to ascertain whether or not the plaintiff's dealings with the property and his relations with Wiswell were such that counsel could make them support a consideration for the execution of the deed. ·

From an examination of the facts appearing in the record in this cause, it seems apparent that the validity of the judgment in the superior court must depend upon the evidence of the attorneys, Messrs. Newman and Howard, which was admitted. If their evidence was inadmissible and is not considered, the affirmative defense set up in the answer of defendant is not sustained. The real controversy here is, were the statements purported to have been made by plaintiff in the counsel chamber of the attorneys privileged. Our statute (Bal. Code, § 5994, subd. 2) reads:

"An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

We think the statute merely declares and confirms the existing rule at common law relating to professional communications between attorney and client. There has not been uniformity in the application of the rule in the courts of this country, but in England the courts seem to have arrived at comparative uniformity in its application. Judge Stephens in Stephens on Evidence (vol. 1, p. 116), states it thus:

" No legal adviser is permitted, whether during or after the termination of his employment, as such, unless with the client's express consent, to disclose any communication, oral or documentary, made to him as such legal adviser, by or on behalf of his client, during, in the course, and for the purpose of, his employment. It is immaterial whether the client is or is not a party to the action in which the question is put to the legal adviser."

This text seems predicated upon the leading English case of *Greenough v. Gaskell,* 1 Mylne & K. 98. Greenleaf on Evidence (vol. 1, § 237), adopts in the text the exact language of Lord BROUGHAM in the *Greenough Case,* which is :

" If, touching matters that come within the ordinary scope of professional employment, they receive a communication in their professional capacity, either from a client, or on his account and for his benefit, in the transaction of his business, . . . they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information . . . in any court of law or equity, either as a party or as witness."

In that case the proposed discovery from the witness was a letter written to the counsel by a third party, to whom the counsel witness had written requesting the information it contained, on behalf of his client. The right to produce the letter was denied because the letter was privileged. Greenleaf (vol. 1, § 239), discussing the privilege, says :

" Whether he be called as a witness, or be made defendant, and a discovery sought from him as such, by bill in chancery, whatever he has learned, as counsel, solicitor, or attorney, he is not obliged nor permitted to disclose."

The principle is also asserted in *Curling v. Perring,* 2 Mylne & K. 380. This was a bill for specific performance of an agreement to purchase annuities for life. Plaintiff moved for the production of letters addressed by the solicitor of defendants to a third party, and the letters were in part set out in the answer, and admitted to be in the possession of defendants. Their production was denied on the ground that the letters were privileged. Weeks on Attorneys, § 144, thus states the privilege :

"An attorney is privileged from giving evidence of any confidential communication made to him by his client, or

concerning which he has been informed in his professional capacity as attorney for the client."

Some of the authorities mention the communications between a party or his legal adviser and his witnesses as privileged. *Storey v. Lennox,* 1 Mylne & C. 525; *Llewellyn v. Badeley,* 1 Hare, 527; *Curling v. Perring, supra; Bunbury v. Bunbury,* 2 Beav. 173; *Ross v. Gibbs,* L. R. 8 Eq. 522; 19 Am. & Eng. Enc. Law, p. 130; *Simpson v. Brown,* 33 Beav. 483.

The supreme court of Maine, in *Wade v. Ridley,* 87 Me. 368 (32 Atl. 975), adjudged that statements of fact made in good faith to an attorney at law for the purpose of obtaining his professional guidance or opinion are privileged communications, that it was not necessary that the relation of attorney and client should exist, and that t' rule should be construed liberally in favor of the pers-- seeking legal advice, in order to encourage a full statement of all the facts. The same court had before observed, in *Sargent v. Hampden,* 38 Me. 581:

"The reasons upon which this time honored rule of law is founded, may apply with equal force, where one makes application to counsel for professional services, although the relation of client and attorney, between them, do not, in fact, subsist."

It is urged by counsel for respondent that, if the communications made by the plaintiff and Wiswell to the attorneys were made in confidence, yet, as there was a third person present, the bar of secrecy was removed, and the facts could be stated by the attorneys. But it was observed in *Blount v. Kimpton,* 155 Mass. 378 (29 N. E. 590, 31 Am. St. Rep. 554):

"They [defendants] contend that if they are made in the presence and hearing of a third person, that removes the privilege, and makes the testimony of the attorney concerning them admissible. But, as between the client and

attorney, they are still confidential, though made in the presence or hearing of a third person. The only effect of that is that they are less confidential in fact, and that such third party may testify to them. It does not qualify the attorney as a witness."

In 7 Benedict's Reports, 433, *In Re Aspinwall, a Bankrupt,* it was held by the court that:

" Counsel for a bankrupt is not required, when ex- ined as a witness in the bankruptcy proceedings, to disclose any information as to the affairs of the bankrupt, which he received as such counsel, from the bankrupt, or from persons to whom he was referred by the bankrupt for the purpose of obtaining such information as such counsel."

In *Bacon v. Frisbie,* 80 N. Y. 394 (36 Am. Rep. 627), the complaint alleged fraudulent conspiracy to obtain from the plaintiff certain hotel property by means of false representations. Defendants (four of them) induced plaintiff to sell and convey the property to defendant Frisbie. Plaintiff offered to prove by an attorney declarations made to the attorney by one of the defendants (Ratnour). Objection was made on the ground that they were privileged communications. The attorney witness stated that he had no general retainer from Ratnour, and received no fee, and was not engaged by him in regard to the suit, and witness did not consider that he was advising him as counsel, for the reason that Ratnour did not inform him what the transaction was until just as he was going out of the door of a saloon; that there were three or four others present at the time, and one of them was within hearing. The court at general term held the testimony of the witness inadmissible as against Ratnour. But it was urged before the court of appeals that the ruling did not extend the privilege far enough; that it was also inadmissible as to the other defendants. The court observed:

" Communications made to an attorney in the course of any personal employment, relating to the subject thereof, and which may be supposed to be drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence, and entitled to protection as privileged communications.   .   .   .   The principle is, that he who seeks aid or advice from a lawyer ought to be altogether free from the dread that his secrets will be uncovered; to the end that he may speak freely and fully all that is in his mind.   Now this principle is not wholly kept, if what is thus said may be told without his assent, though to the immediate harm or help of another only.   The disclosure is made, his secret is bruited, and he has it no longer in his power to stay it from use.   .   .   . And it is but a further natural growth of the rule, that the communication is to be privileged from being put in evidence for or against another.   .   .   .   And had Ratnour not been a party to the action, and so have no right to be at the trial and object, yet the objection would lie in the mouth of Frisbie, who, by it, would but call upon the court to keep untouched a rule of public policy, made and to be kept not especially for his good, but for that of all men."

For further discussion of the reason for the privilege, see *March v. Ludlum,* 3 Sandf. Ch. 35; *McMannus v. State,* 2 Head, 213.

It is true, as has been suggested, that there are very respectable authorities which construe the privilege much more strictly; and cases are found which go to the extent of restricting the privilege alone to where the relation of attorney and client actually exists, and also removes the seal from the mouth of the attorney when made by the client in the presence of others, or by other persons to the attorney in the presence of the client.   Among them, and cited by counsel for respondent as tending to support his contention, are 1 Thompson, Trials, § 296; *In Re O'Donohoe,* 18 Fed. Cas. No. 10,435; *Lalance, etc., Mfg. Co. v. Haberman Mfg. Co.,* 87 Fed. 563; *Montgomery v. Per-*

*kins,* 94 Fed. 23; *House v. House,* 61 Mich. 69 (27 N. W. 858, 1 Am. St. Rep. 570).

In the case at bar the relation of attorney and client actually existed between Wiswell and the counsel witnesses. In the subject matter of that engagement was, at any rate, the upholding of the transfer made from Wiswell to plaintiff. In fact, it is apparent that the essence of the consultation between Wiswell and counsel witnesses and the plaintiff was the very facts which are in controversy in this case, and it is further apparent that Wiswell and the plaintiff at such consultation were each interested in the maintenance of the conveyance. The communications received at that time from Wiswell were intermingled with and supplemented by those from the plaintiff, and, as one of the counsel witnesses says, the whole matter was thoroughly gone into, and Wiswell and plaintiff each communicated unreservedly to counsel; and we think it fairly appears, also, that the plaintiff, while present, desired the advice which was given at the time by the counsel witnesses. It seems that counsel were impressed with the idea that Wiswell alone was their client, as he is the one who paid them; but the advice upon this matter in which both plaintiff and Wiswell were directly interested was given to both, though not formally at any request from the plaintiff. The information received by the counsel witnesses was attributable solely to their professional character. It was given to them for advice, and it is immaterial here to determine, under the circumstances surrounding the consultation, whether the actual relation of attorney and client existed between the plaintiff and counsel witnesses. The disclosures made to the counsel witnesses by the plaintiff, under the circumstances, are within the privilege declared by the statute. The authorities usually state that this privilege is for the benefit of the client, and that he alone can waive it. This is unquestion-

ably correct. But, as observed in *Bacon v. Frisbie, supra,* the objection can be made by any one against whom the evidence is offered, in the interest of sound public policy. The rule should be fairly construed, so that the freest communication may be made between counsel and client, and that communications thus made, involving the necessary and useful intervention of others, may be equally protected.

The further contention of counsel for respondent that the communications of plaintiff and Wiswell were not privileged, because relating to a conspiracy to defraud Wiswell's creditors, cannot be sustained, for the reason that the consultation was with reference to a finished transaction and an executed transfer of real property; and fraud is assumed only upon the statements alleged to have been made to the counsel witnesses of transactions preceding the transfer of the property. The rule, however, is well settled that communications made to counsel in contemplation of fraud or a criminal act are not privileged.

Other errors assigned are deemed unimportant, in view of the conclusion that the issue of fraud tendered by the respondent was not sustained by the evidence.

The judgment is reversed, and the superior court directed to enter a decree quieting the title to the premises in controversy in the plaintiff.

GORDON, C. J., and FULLERTON, J., concur.

DUNBAR, J., dissents.